OPINION OF THE COURT
Jasen, J.
On February 20, 1975, two police officers assigned to an anti-crime unit investigating youth gangs in New York’s "Chinatown” spotted a juvenile for whom a Family Court *217 warrant was outstanding. Having parked their patrol car, the officers returned to the location where they had seen the juvenile only to find that he was no longer there. In an attempt to determine his whereabouts, the officers decided to investigate a nearby clubhouse known to be frequented by the juvenile. While outside these premises, the police officers observed five boys exiting from the clubhouse. When four of the boys, including the respondent, crossed the street, the police stopped and questioned the group.
In the course of their inquiry, the police obtained from one of the boys photographs depicting the respondent holding firearms. Seeking to determine the immediate location of the weapons displayed in the photographs, the police focused their questioning upon the respondent. In response to this questioning, the respondent admitted possessing two guns and led the police to his home where the guns were seized and the respondent arrested. Prior to his arrest, respondent was not advised of his rights either with regard to the assistance of counsel or of his right to remain silent.
The Family Court denied a motion to suppress the seized weapons and, after a trial, adjudicated the respondent a juvenile delinquent. The Appellate Division reversed, on the law, granted the motion to suppress the physical evidence, and dismissed the proceeding. The court was of the opinion that the interrogation of the respondent after the discovery of the photographs was custodial within the meaning of Miranda v Arizona (384 US 436) and, therefore, the police were required to give the respondent the necessary warnings before conducting their interrogation.
On this appeal, by the People, it is argued that the respondent was not in custody during the street investigative inquiry and, thus, preinterrogation advice and warnings were not required prior to the inquiry.
Once again, we are asked to draw a line between conduct which is a permissible exercise of the investigative function of the police and conduct which must be characterized as a seizure, which places the individual interrogated in custody, necessitating the giving of preinterrogation warnings. At what precise point in a street encounter the police are required to give an individual preinterrogation warnings is a question which cannot be resolved by resort to a simplistic answer. Certainly, "there is no litmus-paper test for determining what kind or degree of interference with one’s freedom of action *218 brings the [fifth] amendment into play.” (La Fave, "Street Encounters” and the Constitution: Terry, Sibron, Peters and Beyond, 67 Mich L Rev 40, 97.)
 In Miranda, the Supreme Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person had been taken into custody or otherwise deprived of his freedom of action in any significant way.” (384 US, at p 444, supra.) There is, of course, a wide spectrum of police conduct separating custodial interrogation in a police-dominated atmosphere and an investigative inquiry addressed to an individual during a street encounter. To be sure, an interrogation held in an environment selected deliberately to subjugate the will of an individual may not proceed without the police informing the individual of his rights. (Miranda v Arizona, 384 US, at pp 457-478, supra; People v Rodney P. [Anonymous], 21 NY2d 1, 5.) However, routine police investigation of suspicious conduct on the street generally does not entail a significant deprivation of freedom which would require Miranda warnings. (See People v Rodney P. [Anonymous], 21 NY2d, at pp 10-11, supra.)
 Often police may not have probable cause to arrest an individual, but only a reasonable suspicion that he is engaged in criminal activity. Lacking probable cause the police may not lawfully place an individual in custody. Nonetheless, to ensure effective law enforcement the police have the right to stop and inquire as to the conduct of an individual whom they have reasonable suspicion to believe has committed a crime. (See People v Cantor, 36 NY2d 106; People v De Bour, 40 NY2d 210; People v Stewart, 41 NY2d 65; People v Townes, 41 NY2d 97.)
Certainly, in a brief street encounter in which the police suspect an individual of some criminal activity, it should not be required that warnings be given before questions are asked. To do so would unnecessarily hamper the ability of the police to thwart criminal activity. The need for allowing the police a certain degree of latitude in this area is amply demonstrated in the present case.
While in search of a juvenile for whom a warrant had been issued by Family Court, two police officers stopped and questioned a group of boys exiting from a clubhouse which the officers were aware had been frequented in the past by the juvenile wanted on the warrant. As a result of their inquiry, the officers obtained from one of the boys, other than the *219 respondent, photographs depicting the respondent holding weapons. At this point, although the police officers did not have probable cause to arrest the respondent since they did not know whether he still possessed the guns, they certainly had reasonable suspicion to believe that a crime may have been committed, thus giving them the right—in fact a duty— to inquire whether the respondent had knowledge as to the present whereabouts of the weapons. Confronted with an apparent violation of the Penal Law—a violation which presented a grave danger in the neighborhood—the absence of probable cause to arrest did not preclude the police from conducting an investigative inquiry to determine whether, in fact, a crime had been committed.
The question remains, however, whether the police, although initially justified in inquiring as to the whereabouts of the weapons without giving the respondent preinterrogation warnings, conducted their interrogation in such a manner that would lead a reasonable man to believe that his freedom had been deprived in a significant way. (See People v Rodney P. [Anonymous], 21 NY2d 1, 9, supra.) We believe not. Here, the respondent was questioned on the street, his friends nearby, and on familiar territory close to his home. There was no attempt made to restrain respondent and the nature of the questioning was not coercive. Nor is there any evidence that the police drew their guns or abused the respondent in any way.
Interestingly, these facts are not unlike those presented in People v Rodney P. (Anonymous) (supra). There, the police, after learning of the defendant’s identity from his accomplice in a car theft, questioned the defendant in front of his home. Finding that a reasonable person would not have believed that his freedom had been restricted in a significant way, we held that preinterrogation warnings were not required to have been given. (21 NY2d, at p 10, supra.)
Respondent would contend that Rodney P. is distinguishable in that in the present case the respondent knew that the police suspected him of a crime, for the simple reason that the basis for the questioning was the seized photographs. In essence, respondent’s argument is that a suspect having knowledge of the information which led the police to question him is more apt to believe that his freedom has been restrained than is a suspect without such knowledge. The test, however, in deciding whether a defendant was in custody at *220 the time of the questioning "is not what the defendant thought, but rather what a reasonable man, innocent of any crime, would have thought had he been in the defendant’s position.” (People v Yukl, 25 NY2d 585, 589, cert den 400 US 851.) Thus, a suspect’s awareness that the police already possess incriminating evidence against him generally is irrelevant in determining whether the interrogation was custodial. Since the manner of questioning cannot be characterized as custodial, the police were not required to give the respondent preinterrogation warnings prior to questioning him in conjunction with their investigative inquiry as to the whereabouts of the weapons portrayed in. the seized photographs.
 Although we conclude that the interrogation of the respondent was not custodial, we must still decide whether the ensuing warrantless search of the respondent’s apartment and seizure of the weapons involved was reasonable and necessary under the circumstances. In the absence of a valid search warrant, governmental intrusion into the privacy of the home is, with certain limited exceptions, prohibited by constitutional limitations. (NY Const, art I, § 12; US Const, 4th, 14th Arndts; People v Gonzalez, 39 NY2d 122.) The exception upon which the People rely is the existence of exigent circumstances necessitating an immediate search of respondent’s apartment. While it has been recognized that there are circumstances which make the requirement of obtaining a search warrant either unwise or impractical, the burden of justifying a warrantless search is placed squarely on the law enforcement agency that seeks to apply the exception of exigent circumstances. In other words, the People who seek exemption from constitutional mandate must show that the exigencies of the situation made that course imperative. (McDonald v United States, 335 US 451, 456.)
 The People contend that upon learning from the respondent that he had weapons secreted in his apartment, it became imperative for the police to act immediately before someone in the apartment could remove or destroy the weapons. While we would agree that the police could search respondent’s apartment upon learning from him that the weapons were at his apartment where they reasonably believe such evidence is threatened with loss from any source, we do not find, upon the record before us, that the police had any basis to reasonably believe that the weapons were in fact *221 threatened with removal or destruction. Even though the police had probable cause to arrest the respondent, as they did after his admission that he possessed the weapons, as well as probable cause to justify the issuance of a search warrant, it does not justify a warrantless search of the respondent’s apartment, absent a showing that the weapons were likely to be removed from the premises or destroyed. The People having failed to establish this essential element, other than alleging the possibility of destruction or removal, it cannot be said that the People have met the burden of justifying the warrantless search and seizure of the evidence. Moreover, the police had ample opportunity to obtain a search warrant after arresting and placing the respondent in custody. Certainly, having been incarcerated, the respondent was prevented from returning to his apartment to remove or destroy the weapons. Under these circumstances, we cannot say that exigent circumstances were present necessitating an immediate warrant-less search of respondent’s apartment.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed, without costs.