■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EUGENE GRANT, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Suffolk County, rendered October 23, 1979, convicting him of manslaughter in the first degree, upon a plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress statements. Judgment reversed, on the law, plea vacated, motion granted to the extent of suppressing defendant's statements made on February 15 and 16, 1979, and case remitted to Criminal Term for further proceedings consistent herewith. In connection with a murder investigation, defendant was interrogated on three occasions. During the first two interrogations, defendant made certain statements concerning his activities on the night of the murder. The statements were not inculpatory. During the last interrogation, however, which was approximately 18 months after the murder, defendant confessed to the crime. Though defendant claims that his statements made during each interrogation were illegally obtained, we focus exclusively upon the last interrogation during which defendant confessed to the crime. The sole question presented is whether defendant was "in custody" at the time he confessed to the crime. At the suppression hearing the People conceded, and the hearing court found, that there never existed probable cause to arrest defendant. Therefore, given the requirement that any detention, other than that which may be within the ambit of *Terry v Ohio* (392 US 1) and its progeny (see, also, CPL 140.50), must be predicated upon probable cause *(Dunaway v New York,* 442 NY 200), a finding that defendant was "in custody" may thus taint the confession as the fruit of an illegal detention (see *Wong Sun v United States,* 371 US 471). At the suppression hearing, the testimony of the People's witnesses conflicted with that of defendant. The hearing court, however, chose to credit the testimony of the People's witnesses. While deferring to the discretion of the hearing court in its assessment of credibility, we disagree with its conclusion that defendant was not "in custody". According to the testimony of the People's witnesses, defendant's third encounter with the police in connection with this matter began on the evening of February 15, 1979. That evening, certain detectives involved in the murder investigation, upon gaining new information, decided to speak with defendant again. Four detectives thereupon proceeded to Hempstead to locate defendant. They traveled in two vehicles, two detectives in each vehicle. It was their intention, upon locating defendant, to speak with him at the precinct rather than in Hempstead. One

detective testified that their purpose was to elicit a confession from defendant, for he could not otherwise have been arrested. Defendant was located in Hempstead driving his automobile. The detectives in one vehicle signaled to defendant, by honking their horn, to pull over. Once defendant's automobile came to a halt, the detectives pulled their vehicles behind defendant. Two detectives then approached defendant; the other two positioned themselves at either side of the rear of defendant's automobile. After the detectives introduced themselves to defendant, they told him that some new matter had developed. They also asked him if he would accompany them to the precinct. Defendant gladly agreed, for, according to the People's witnesses, defendant stated he had nothing else better to do that evening and, in any event, was willing to co-operate. It was also suggested to defendant that he ride with the detectives and that his automobile would be taken to the precinct by one of the detectives. Again, defendant agreed. During that meeting, defendant was never told that he could refuse to accompany the detectives or that he was free to leave. The questioning of defendant at the precinct began at about 9:00 P.M. and continued until about 3:30 A.M., when defendant finally confessed to the crime. Throughout the questioning, defendant persisted in his assertion of innocence. At one point during the questioning defendant went to the bathroom. He was escorted there and back and, while inside, a detective remained outside. In view of the circumstances surrounding defendant's encounter with the police, one would be hard-pressed to say that a reasonable person, innocent of any crime, would not have thought he was in custody had he been in defendant's position (see *Matter of Kwok T.,* 43 NY2d 213; *People v Yukl,* 25 NY2d 585, cert den 400 US 851). There having been no probable cause for placing defendant in custody, the confession was, thus, illegally obtained. In this regard, it also cannot be said that there existed sufficient attenuation, for the confession was made during the course of the illegal detention at the instigation of the detectives whose sole purpose was to obtain a confession (see *Dunaway v New York,* 442 US 200, *supra; Brown v Illinois,* 422 US 590). We have considered defendant's other contentions, including those concerning the statements made by him during prior interrogations, and find them to be without merit. Damiani, J. P., Rabin and O'Connor, JJ., concur.

Weinstein, J., dissents and votes to affirm the judgment, with the following memorandum, in which Thompson, J., concurs: In my view, defendant was not placed in custody during the night of February 15/16 until after he had confessed to the murder which had occurred in early August, 1977. Therefore, even though it is conceded that there was no probable cause to arrest before this confession, there was no taint attached to the confession such as to require its suppression (cf. *Dunaway v New York,* 442 US 200). The majority quite properly defers to the discretion of the hearing court in assessing credibility and rendering findings of fact; however it misinterprets those findings of fact so as to conclude that defendant was in custody as a matter of law before he confessed. I believe that such was not the case. The hearing court found that the defendant had, on two previous occasions, August 3 and 7, 1977, co-operated in noncustodial interrogations (during which he made statements later shown to be inconsistent with statements made in Feb., 1979), and that on this last occasion he gladly agreed to accompany the officers to the police precinct, quite willing to co-operate with them, as he had in the past. The court found that he voluntarily remained at the precinct from 9:30 P.M. on February 15 until 3:45 A.M. on February 16, at which time he made the confession. He was never handcuffed, and his liberty was not restrained. Defendant was not forbidden to

call his lawyer or prevented from going to the bathroom. I do not believe that a reasonable person, innocent of any crime, would have thought himself in custody under these circumstances (cf. *Matter of Kwok T.*, 43 NY2d 213; *People v Yukl*, 25 NY2d 585, cert den 400 US 851). Quite the contrary; the circumstances, viewed in their entirety, would have given the reasonable innocent person every indication that he was voluntarily rendering a service to the officers by co-operating, as he already had on two previous occasions, and that this co-operation could be terminated by defendant if and when he pleased, as was the case in the past. The *Dunaway* case *(supra)*, upon which the majority relies, involved a single, custodial interrogation. It is easily distinguishable from this case, in which, from the prior course of conduct between the police and the defendant, the noncustodial nature of the final interrogation could easily be inferred. Accordingly, in my view, the hearing court properly denied the motion to suppress the confession and other statements.