OPINION OF THE COURT
Howard E. Goldfluss, J.
It is commonly accepted to be the law that when a person is interrogated by the police in a noncustodial setting, no Miranda warnings are required. The unique question presented herein is whether gratuitous giving of the rights by the police, although not required, changes that noncustodial status.
At the hearing on the omnibus pretrial motion, Detective Ramos testified that he had received information concerning the possible involvement and/or participation of Kevin Hicks in a series of particularly flagrant and vicious rapes, sodomies, and robberies involving at least seven females at three locations in Bronx County. On July 17, 1980, the detective went to Hicks’ residence. He spoke to Alan Hicks, the brother of the defendant, who informed him that Kevin was not at home. Detective Ramos then told Alan Hicks of the information he had received concerning his brother Kevin. Alan Hicks responded that he *731 did not believe his brother Kevin was capable of committing such acts — and that he would bring him into the precinct to discuss it and clear it up.
Later that day, Ramos received a communication from a Housing Authority police officer named Edwards, a friend of the Hicks brothers. Edwards informed Ramos that Kevin and Alan Hicks were both waiting for him to pick them up. Ramos proceeded to the housing police detention facility together with his partner, Detective Lugo.
Kevin Hicks together with his brother Alan accompanied the two detectives to the 48th Precinct. Besides Ramos, Detective Lugo and Alan and Kevin Hicks testified at the hearings. They were in full agreement that Kevin Hicks entered the station house voluntarily on July 17, 1980, and that he was not in custody at that time. The conflict in testimony arises from what transpired after they arrived at the precinct.
After an extensive hearing, this court makes the following findings of fact:
Immediately after his voluntary appearance at the station house, the defendant was given his Miranda warnings. After the final warning: “Now that I have advised you of your rights, are you willing to answer questions without an attorney present” the defendant Hicks asked the officers if he needed a lawyer. Detective Lugo then asked him if he thought he was in trouble, and also asked him if he thought he needed a lawyer. Hicks replied in the negative.
Hicks then made a statement, partially implicating himself and two others. The statement was reduced to writing, signed and initialed by Kevin Hicks and his brother Alan. During the extended inquiry, Ramos continued to assure Hicks that he was free to leave at any time, and pursuant to his assurances Hicks and his brother were in fact permitted to leave despite the fact that the statements were given.
Prior to their leaving, however, Kevin Hicks was asked by Ramos to voluntarily submit to being fingerprinted and photographed in connection with the continuing investigation. Kevin Hicks consented to this procedure without coercion. His fingerprints matched those found at a loca *732 tion which he had previously denied knowledge of, and he was subsequently arrested and charged with complicity in all of the criminal acts performed at the three locations.
These factual findings however are not dispositive of the issue. It remains for this court to decide as a matter of law whether the giving of the Miranda warnings, albeit gratuitously, changed the setting to a custodial one and if so, does this require his written statement, his photograph, his fingerprints, and the evidence resulting therefrom to be suppressed.
When an individual enters a police station voluntarily at the request of a police officer, and is immediately informed, as here, that he was not under arrest and leaves the station without hindrance, that person is not and has not been in custody. (See People v Yukl, 25 NY2d 585; People v Pugliese, 26 NY2d 478.) Under such circumstance, the United States Supreme Court in Oregon v Mathiason (429 US 492) has gone further and found that even if the questioning of the defendant took place in a “coercive environment” Miranda warnings are still not required. Any interview of one suspected of a crime by a police officer necessarily has coercive aspects.
A police officer represents law enforcement, and it is reasonable to expect that a culpable person who is so questioned, must have lingering thoughts that he may be ultimately charged with the commission of a crime. The Miranda case does not require warnings to be administered by police to everyone they question, in or out of a police station. They are required when a person is “in custody”, and only when there is a restriction on a person’s movements is he rendered “in custody” and Miranda by its terms, applies to that status only. In making the finding that the defendant was not in custody, this court is applying the standards set down by the Court of Appeals in People v Yukl (supra) and People v Pugliese (supra). As that court pointed out in both decisions, the subjective belief of the defendant is not the determinative factor. “The test is not what the defendant thought, but rather what a reasonable man, innocent of any crime, would have thought had he been in the defendant’s position”. (People v Yukl, supra, at p 589.) Under this test, I find that an *733 innocent and reasonable individual, finding himself in the defendant’s situation, would not consider himself detained or his freedom of action to be impaired in any significant way.
It is interesting to note that the Supreme Court decided Mathiason despite the fact that the defendant was lured into making statements by the questioning officer’s false representations to him that the defendant’s fingerprints were found at the scene of the occurrence. The court found that the misrepresentations were irrelevant to the only question concerning the admissibility of his statement, i.e., his noncustodial status.
Therefore, it is the law, that even aspects of subsequent illegal detention does not affect the issue of suppression. It must be reiterated that there is no issue of illegal detention present herein which this court finds credible.
The defendant submits no authority, nor could this court find any which stands for the proposition that the gratuitous giving of the rights changes the status of the defendant. If it is not required, then the officer’s recital of the Miranda warnings changes nothing. The defendant’s response, “Do I need a lawyer” must be taken in the context in which it was given and all the surrounding circumstances. He entered the station house to clear up the cloud hanging over his head.* At that point, the questioning was held at an investigatory stage, freely, willingly, knowledgeably and voluntarily participated in by the defendant. At that point, after he made his inquiry and after the officer asked him in effect if he committed any act which required the presence of an attorney for consultation, he replied in the negative. He was free, after making that response, to leave. He chose to stay.
The remaining issue is whether the fingerprints taken of the defendant require suppression because at the point they were taken, they were obtained by implied coercion in violation of his rights under the Fourth and Fifth Amendments.
The facts herein bear a marked similarity to the fact pattern in United States v McCarthy (297 F2d 183). The *734 record in that case discloses that the defendant knew he was not under arrest and was under no obligation to accompany the agent to the FBI Office. The Circuit Court reversed the lower court’s ruling which suppressed evidence of the fingerprints and all ensuing inculpatory evidence resulting therefrom. Under those circumstances, which are indeed the circumstances herein, there was no basis to suppress them.
The motion is in all respects denied.

 He testified at the hearing that prior to going to the station, he did not have the slightest conception of why he was wanted.