OPINION OF THE COURT
Seymour Lakritz, J.
The above-named defendants have each been indicted for the crimes of assault in the second degree and assault in the third degree; in addition, defendant Kleeman has been separately indicted for the crime of reckless endangerment in the second degree. All three defendants are police officers; defendants Kleeman and Nugent are employed by the New York City Police Department and defendant Gardner is employed by the New York City Transit Police Department. These charges arise out of an incident involving a civilian, one Jack Coulter, who was arrested for assault by these three off-duty police officers following a physical confrontation between the defendants and Mr. Coulter, on December 2, 1984. Several statements, both oral and written (in the form of official police reports), were made by these defendants to other police officers prior to their arrest in February of 1985. Having reason to believe that their Federal and State constitutional rights were allegedly violated, the defendants move for suppression of said statements. The defendants Gardner and Nugent further move to preclude at trial the use of their taped interviews made to police personnel on December 2, 1984, pursuant to Transit Police Rules and Regulations, chapter 4, paragraph 22 (hereafter referred to as Chap 4) and New York City Police Patrol Guide § 118-9 (hereafter referred to as 118-9), respectively.
A Huntley hearing was held before this court on March 12 and 21, 1986, at which time the People presented three witnesses: Sergeant John Connolly, of Field Internal Affairs, Sergeant Robert Grant, then patrol supervisor of the 105 Precinct and Police Officer Michael Bros, who was present on the scene and drove the defendants to the hospital. The court found the testimony of all three witnesses to be candid, straightforward and worthy of belief.
FINDINGS OF FACT
At approximately 3:30 a.m. on December 2, 1984, Sergeant Grant and his driver and Officer Bros and his partner arrived at the location of 89-25 214 Street. They were responding to a *764 series of police radio communications that had stated that a fight had occurred and shots had been fired at the given address. Found at the scene were the three defendants, dressed in civilian clothes, and Mr. Jack Coulter, bleeding from the head and being placed into an ambulance. When asked by Sergeant Grant what had happened, defendant Klee-man stated that they’d been drinking, but "it was o.k.” and that Coulter had assaulted them with a baseball bat. Defendant Nugent directed the sergeant to a nearby lawn where he pointed out the baseball bat in question. Based upon the information received via the radio run, Grant inquired as to whether shots had been fired. The three police officers answered in the negative; Kleeman and Nugent orally and Gardner by nodding his head. Grant and the three police officers then went to the 105 Precinct station house where they were ordered to begin preparing various official police forms, in connection with the arrest of Jack Coulter and the injuries they suffered during the incident.
Since all three police officers exhibited various degrees of physical injury, Officer Bros transported them to the hospital for medical treatment. During the ride to the hospital a general conversation ensued between Bros and the three police officers, wherein the details of the Coulter incident were again related. As before, the group categorically denied that shots had been fired. Officer Nugent was heard to say that he didn’t have a gun while off duty since he was following Ward’s (Police Commissioner) guidelines. After receiving medical attention the three police officers returned to the 105 Precinct.
Sergeant Connolly, of Field Internal Affairs, was alerted to report to the 105 Precinct and arrived at approximately 8:00 a.m., on December 2, 1984. He noted that Gardner, Nugent and Kleeman appeared tired, dishevelled and injured. After conferring with the captain on duty, Connolly commenced an internal police investigation with respect to possible misconduct on the part of the three police officers. The internal investigation was sparked by the reports from witnesses of shots being fired at the scene of the Coulter arrest, contrasted against the blanket denial of same by the three police officers.
Sometime during that morning, attorneys representing the three police officers came to the station house. Specifically, Mr. Joseph Gentile on behalf of New York City Police Officers Kleeman and Nugent and Mr. Barry Agulnick on behalf of Transit Police Officer Gardner. In the presence of their attorneys the two New York City police officers (Kleeman and *765 Nugent) completed the various required forms dealing with the Coulter arrest, i.e., firearm discharge/assault report; witness statement-injury to member of the department report and line-of-duty injury report. At approximately 12:00 p.m., Officer Kleeman, accompanied by Mr. Gentile, submitted said police forms, including his firearm discharge report; Officer Nugent did likewise, submitting the police forms that he had prepared that morning. It was "only then that Sergeant Connolly and the other supervising police personnel learned for a fact that shots had indeed been fired and that Police Officer Kleeman had been the person who had fired them. Due to the inadvertent loss by the Police Department of the original firearm discharge report, Kleeman was asked to prepare three additional reports, sometime near the end of December 1985.
Pursuant to police regulations, Officer Nugent was given his 118-9 rights and Officer Gardner was given his Chap 4 rights by an officer from the Transit Police. Both officers were then interviewed on audiotape by supervising personnel concerning the events that had transpired earlier that morning. Officer Kleeman, concededly now a target of a criminal investigation, was given standard Miranda warnings. Kleeman exercised his constitutional right to silence and refused to make a statement.
CONCLUSIONS OF LAW
The statements that are sought to be suppressed and/or precluded by the defendants may be divided into three distinct temporal phrases: (a) the oral statements made at the scene or on the way to the hospital to either Sergeant Grant or Officer Bros, (b) the written police forms prepared at the 105 Precinct and submitted prior to the administration of constitutional warnings, and (c) the audiotaped statements of Gardner and Nugent following said warnings.
oral statements (Kleeman, Nugent and Gardner)
It cannot be legitimately argued that the defendants were themselves the targets of a criminal investigation upon the arrival of Sergeant Grant and Officer Bros, at approximately 3:00 a.m. on the morning in question. Having responded to a radio run of "shots fired” the initial questions put to the three defendants were legitimate, on-the-scene investigative questioning of the arresting officers and not the product of a custodial interrogation (see, People v Marletti, 106 AD2d 406; People v Yarusevich, 81 AD2d 528). No reasonable man (espe *766 daily a police officer) innocent of any crime, would have believed himself to be in custody or the "target” of an investigation and so Miranda warnings were not required (People v Davis, 109 AD2d 846, 847, citing People v Yukl, 25 NY2d 585, 589, cert denied 400 US 851; Matter of Kwok T., 43 NY2d 213, 219-220). The same rationale may be applied to the conversation that occurred between the defendants and Officer Bros going to and at the hospital. Desire on the part of the police to account for the reports of shots being fired was understandable under the circumstances, and did not transform the natural investigative setting into a climate of custodial interrogation.
written statements (Kleeman and Nugent)
The arrival of Sergeant Connolly, of Field Internal Affairs, to the 105 Precinct at approximately 8:00 a.m. indicated that a new element, apart from normal postarrest procedures, had been added to the picture. However, his appearance and participation in the internal investigation did not, in and of itself, signal the initiation of criminal proceedings against Kleeman, Nugent or Gardner, or that they were even yet considered targets of a "criminal” investigation. The three police officers were never in custody, were actually free to come or go from the station house, and had not been searched or asked to surrender any weapons they might have been carrying. Their having been ordered to complete the above-mentioned official police forms was standard police procedure, not legally significant in terms of a judicial finding of custody or even detention. The court finds that until such time as Kleeman and Nugent submitted all the forms in question at approximately 12:00 p.m., and the police determined that Kleeman had fired his weapon earlier that morning, the entire morning’s business had been an internal police investigation, not requiring either Miranda warnings, 118-9 warnings or Chap 4 warnings. As such, the statements contained within said police forms are deemed voluntary and not obtained in violation of any rights that the defendants may derive under the Federal or State Constitutions or 118-9 or Chap 4.
With regard to exhibits Nos. 2 through 4 (Kleeman firearm discharge/assault reports), the situation is different. These reports, though substantially similar to the original filed on December 2, 1984, were requested by the Police Department sometime around December 28 or 29, 1984, many days after *767 Kleeman had become the target of an ongoing criminal investigation. As a result their preparation and production by Kleeman is deemed involuntary and their admission at trial would be in stark contravention of the guidelines established by 118-9. Accordingly, these later three reports will be suppressed for all purposes.
audiotaped statements (Nugent and Gardner)
The People have conceded that they do not intend to offer at trial, on their direct case, the audiotaped interviews of defendants Nugent and Gardner taken pursuant to 118-9 and Chap 4. They do, however, seek leave to use same for impeachment purposes should either or both defendants testify at trial. While acknowledging that both cited provisions provide, in sum and substance, that any statements or information or evidence which is gained by reason of such statements cannot be used against these defendants in any subsequent criminal proceedings, the People argue that the United States Supreme Court’s holding in Harris v New York (401 US 222) provides legal precedent for the use of the defendants’ statements for impeachment purposes during cross-examination.
In Harris v New York (supra), the accused was arrested for selling heroin and was taken into custody where he was questioned by the police. Prior to being questioned he was not warned of his right to appointed counsel, in violation of Miranda v Arizona (384 US 436). At trial, the People made no effort in its case-in-chief to use the statements allegedly made by Harris, but did use same on cross-examination to impeach his credibility. The court held that "The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances * * * therefore * * * petitioner’s credibility was appropriately impeached by use of his earlier conflicting statements” (Harris v New York, supra, p 226). A similar result was reached in Oregon v Hass (420 US 714).
Yet, as defendant Nugent has correctly pointed out, the Supreme Court in Harris (supra) (as well as Hass, supra) expressly noted that the defendant made "no claim that the statements made to the police were coerced or involuntary” (Harris v New York, supra, p 224; Oregon v Hass, supra, pp 722-723; see, New Jersey v Portash, 440 US 450, 458-459). The situation presented herein is dissimilar, both defendants vigorously contend that their statements made pursuant to 118-9 *768 and Chap 4 were involuntary, and therefore not within the ambit of the Harris and Hass holdings.
The arguments presented by the defendants are well founded. Patrol Guide § 118-9 provides, in pertinent part (as does ch 4, para 22), as follows: "I further wish to advise you that if you refuse to testify or to answer questions relating to the performance of your official duties, you will be subject to departmental charges which could result in your dismissal from the Police (or Transit Police) Department” (emphasis supplied by court).
Faced with the distinct possibility of departmental charges and their possible dismissal from the police force, the defendants’ decision to make audiotaped statements cannot be construed as anything but involuntary. In New Jersey v Portash (supra) the State’s attempt to use the defendant’s prior testimony before a Grand Jury to impeach him at trial was held to be unconstitutional (in Portash, the defendant did not take the witness stand, but the court found that his failure to take the stand did not render the constitutional question abstract or hypothetical). The court stated that "[testimony given in response to a grant of legislative immunity is the essence of coerced testimony * * * information given in response to a grant of immunity may well be more reliable than information beaten from a helpless defendant, but it is no less compelled” (New Jersey v Portash, supra, p 459).
This court holds that the facts at bar are analogous to the facts presented in New Jersey v Portash (supra) in that the defendants Nugent and Gardner also testified in response to a grant of immunity (in this case municipal as opposed to legislative). They should not now be faced with the possibility of having those statements used against them at trial, for any purpose.
SUMMARY
a) All motions to suppress addressed to the oral statements of the defendants made to Sergeant Connolly or Officer Bros on December 2, 1984 are denied.
b) All motions to suppress addressed to the written statements contained within the forms prepared on December 2, 1984, as made by defendants Kleeman and Nugent are denied, except that firearm discharge/assault reports Nos. 2, 3 and 4 of defendant Kleeman are suppressed.
c) The motions to preclude the People from using the *769 audiotaped interviews of defendants Nugent and Gardner for impeachment purposes are granted.