THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PETER PRAHL, Appellant

The complainant was raped in her Southampton house during the early morning hours of June 16, 1983. While in the hospital she gave the investigating detective a description of her attacker. The police who responded to the scene had taken along with them a police dog which picked up a scent originating at a rear deck door leading to the complainant's bedroom and "ran a track" around the house terminating on the porch

of the adjacent house. The complainant's house and the adjacent one were the only houses on the peninsula.

The defendant, a German national, was the only person staying in the adjacent house, which belonged to his uncle's son-in-law. When the defendant answered the door for the police, after ascertaining that they were police, he gestured for them to come inside and indicated that he spoke no English. The police sent for a local German speaking person to translate and by the time that person arrived, so had the defendant's uncle. The uncle was informed that the defendant fit the general description given by the complainant and that the defendant was not under arrest and did not have to speak. The defendant denied any involvement and maintained that he had never been near the complainant's house. He consented in writing and then submitted various body samples including palm prints at the house while vocally maintaining his innocence.

The following evening, June 17, 1983, after the palm print exemplar was found to match one lifted from the rear deck doorpost leading to the complainant's bedroom, the police arrested the defendant in his uncle's house in Garden City without a warrant. The defendant subsequently gave the police a statement in which he, *inter alia,* maintained his innocence and indicated that he had given the exemplars voluntarily. Following the denial of his suppression application after a *Huntley-Dunaway* hearing, the defendant pleaded guilty to rape in the first degree.

On appeal, the defendant urges that the exemplars and his subsequent statement should have been suppressed as evidence obtained as a result of unreasonable seizures. This contention lacks merit. The hearing testimony supports the conclusion that the defendant voluntarily gave the exemplars and the statement. Although it may be possible that on June 16, 1983, the defendant felt obliged to cooperate with the police in order to maintain his claim of innocence, this subjective view by the defendant does not require that we find him to have been in custody *(see, People v Yukl,* 25 NY2d 585, 588-589, *cert denied* 400 US 851). It may not be said that a reasonable man in the defendant's position, innocent of any crime, would have felt that he was in custody on the morning of June 16, 1983 *(see, People v Bertolo,* 65 NY2d 111, 116; *People v Yukl, supra).* The record also adequately supports the hearing court's finding that there existed probable cause to arrest the defendant on June 17, 1983 *(see, People v Bittner,* 97 AD2d 33, 36).

The defendant failed to raise a constitutional challenge to his arrest based on *Payton v New York* (445 US 573) within the context of his initial suppression motion, and as a result the arresting officers did not testify at the hearing. Consequently, the record is inadequate to permit an appellate court to make an intelligent determination on the merits of that constitutional issue and the defendant cannot now rely upon it as a ground for reversal *(see, People v Martin,* 50 NY2d 1029, 1031; *People v Jones,* 81 AD2d 22, 40-41).

The imposed sentence of 4 to 12 years' imprisonment was the sentence agreed upon and was appropriate. The defendant cannot complain that it was excessive *(see, People v Kazepis,* 101 AD2d 816).

We have considered the contentions raised by the defendant in his *pro se* brief and find them to be without merit. Niehoff, J. P., Weinstein, Lawrence and Kooper, JJ., concur.