THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT BASSO, Appellant.

On February 19, 1984, the body of Marguerite Aguilera was discovered in a room at the Trade Winds Motel in Yonkers. She had been brutally strangled and an obscene remark was written on her stomach in lipstick. A night clerk who had been on duty when the decedent checked in informed the police that she had arrived at the motel in a taxicab at about 10:30 P.M. on February 18, accompanied by a white male. In Aguilera's purse was an address book in which the defendant's name was written next to the telephone number of a taxicab service. The police contacted the taxicab company and learned from one of the employees that the defendant worked there as

a cab driver. Furthermore, his description matched that given to the police by the motel night clerk.

On February 20, 1984 two plain-clothes detectives contacted the defendant at his place of employment in The Bronx. He agreed to talk with the detectives and they did so seated in the detectives' car which was unmarked and unlocked. Before the conversation began one of the detectives informed the defendant of his rights because the detective believed the defendant might "become a target of the investigation". The defendant waived his right to counsel and agreed to speak with detectives. After speaking with the defendant for a short while the detectives asked him to accompany them to Yonkers police headquarters, and the defendant agreed. During their drive to Yonkers the defendant made several statements which led the police to believe that he was definitely involved in the murder and at that point he was, as far as the police were concerned, in custody. No further conversation between the defendant and the detectives took place until they arrived at Yonkers police headquarters where the defendant was again advised of his constitutional rights. The defendant then made an oral confession after which the police had him sign a written waiver of his rights which he did voluntarily. Subsequently the defendant signed a written confession which was typed on a form which contained a section wherein the defendant again waived his *Miranda* rights. In his confession the defendant admitted to taking slacks which had been worn by Aguilera on the night of her death. He also removed a ring from her finger and took the motel room key when he fled after the murder. He signed a form allowing the police to search his home for the slacks and assisted the police in locating the room key and ring which he had discarded after the murder. All of the defendant's statements and the physical evidence recovered by the police were admitted at trial.

On appeal the defendant argues that his statements and the physical evidence should have been suppressed as the result of an illegal arrest. He contends that he was, in fact, in custody from the time the police first spoke to him outside his place of employment, and, since the police did not have probable cause to arrest him at that time, all his subsequent statements and the physical evidence should be suppressed as the fruit of the poisonous tree. However, there is nothing in the record to persuade this court that the defendant was in custody at the time he first spoke to the police. The fact that he may have been a suspect at that time is not, in and of itself, proof that he was in custody (*see, Matter of Kwok T.,* 43 NY2d 213, 218;

*People v Liccione,* 63 AD2d 305, *affd* 50 NY2d 850, *rearg denied* 51 NY2d 770), nor is the fact that he was advised of his *Miranda* rights prior to this initial interrogation *(see, People v Oates,* 104 AD2d 907, 910). Under the circumstances a reasonable person innocent of any crime would not have believed himself to be in custody *(see, People v Yukl,* 25 NY2d 585, *cert denied* 400 US 851; *People v Ryan,* 121 AD2d 34, 58). Once the police had probable cause to arrest the defendant and he was, in fact, in custody he was again advised of his rights and he knowingly and intelligently waived them before any additional statements were made. There is nothing in the record which would counter the testimony of the police that the defendant's actions were other than voluntary.

We further find unpersuasive the defendant's claim that he proved by a preponderance of evidence the affirmative defense of extreme emotional disturbance which he raised at trial *(see,* Penal Law § 125.25 [1] [a]; *People v Patterson,* 39 NY2d 288, *affd* 432 US 197). The record reveals that the defendant was acting out of anger or embarrassment which emotions are not equivalent to the loss of self-control generally associated with the defense of extreme emotional disturbance *(People v Walker,* 64 NY2d 741, *rearg dismissed* 65 NY2d 924). There is no reason to conclude that the decision of the court on that issue should be overturned *(see, People v Collins,* 123 AD2d 778, *lv denied* 69 NY2d 710).

In light of the brutal and cold-blooded nature of the crime we do not find that the court abused its discretion in sentencing the defendant to a term of imprisonment of 20 years to life for murder in the second degree. Mollen, P. J., Thompson, Rubin and Spatt, JJ., concur.