■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE JEMMOTT, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Schneier, J.), rendered May 28, 1985, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress his inculpatory statements to the police.

Ordered that the judgment is affirmed.

The body of Brooks Martin was discovered in his apartment on February 19, 1984. A set of keys belonging to the defendant was recovered near the body. In the course of investigating the murder, the police met the defendant outside his home as he returned from work, and asked him to come to the police station "to talk". The defendant complied with this request. After an interview at the station house, the defendant agreed to take a polygraph test, but while traveling in the officers' car to police headquarters, he changed his mind, and requested to speak to his father. The officers immediately re-

turned to the station house, stopping on the way to permit the defendant to enter a shop, unaccompanied, to buy cigarettes. The evidence contained in the record supports the finding that, as of this time, the defendant was not handcuffed and had not been advised that he was not free to leave. When his father arrived at the station, the defendant admitted to him in the presence of the police officers that he had murdered the deceased.

In passing on whether the defendant had been in custody prior to this admission, the subjective beliefs of the defendant are not the determinative factor. Rather, the test is what a reasonable person, innocent of any crime, would have thought had he been in the defendant's position (see, Matter of Kwok T., 43 NY2d 213; People v Grant, 80 AD2d 862). The evidence in the record reveals that the police officers had knowledge that the defendant was related to and in regular contact with the victim, who had given him the set of keys referred to above. It is not unusual in a murder investigation for the friends and relatives of the deceased to be interviewed. "[T]he fact that a defendant is being interviewed in the police station does not necessarily mean that he is to be considered 'in custody' " (People v Yukl, 25 NY2d 585, 589). We therefore conclude that the defendant was not in custody until after he had made the statement to his father (see, People v Yukl, supra; cf., People v Biggs, 88 AD2d 960; People v Grant, supra).

Further, the hearing court, as the trier of fact, resolved the issues of credibility in favor of the police officers, and determined that they had in fact administered the Miranda warnings to the defendant prior to their initial interview of him. The further contention that defendant should have received the Miranda warnings immediately prior to his speaking with his father, because his father was acting as a police agent, is without merit. It was defendant who requested to speak to his father and the officers complied by arranging for the meeting. The officers did not relay any questions to the defendant through his father, but, following his admission, again advised the defendant of his rights before he made a full statement (cf., People v Miller, 137 AD2d 626). It cannot be said that the private conduct of the father was "so pervaded by governmental involvement that it los[t] its character as such and invoke[d] the full panoply of constitutional protections" (People v Ray, 65 NY2d 282, 286).

The defendant also contends that the People violated the principles of Brady v Maryland (373 US 83, 87) and that therefore he was denied due process. At the trial police

witnesses testified that they had vouchered money and other valuable property recovered in the deceased's apartment. The defendant argues that those vouchers constituted exculpatory evidence in that they would have served to negate the evidence of intent to commit the underlying robbery, on which the charge of felony murder was predicated. Therefore, the defendant argues that he should have been advised of their existence prior to trial. We reject this contention.

The rule of *Brady v Maryland (supra),* does not direct disclosure at any particular stage of the proceedings *(United States v Kaplan,* 554 F2d 577). The issue is whether the evidence was disclosed in time for the defense to use it effectively *(see, People v Simmons,* 36 NY2d 126; *People v Mackey,* 52 AD2d 662). In the present case, the evidence was disclosed early in the People's direct case and the defendant had the opportunity to cross-examine the police witness as to the recovery of the property. The defense had sufficient time to and, in fact, did utilize the material, and there was no indication that earlier disclosure would have affected the nature of the evidence or altered the defendant's trial strategy *(see, People v Clark,* 89 AD2d 820).

We have examined the defendant's remaining contentions and find them to be without merit. Bracken, J. P., Kunzeman, Weinstein and Kooper, JJ., concur.