(March 29, 2016)

■ The People of the State of New York, Respondent, v Emma Cornelius, Appellant. [27 NYS3d 566]—

Judgment, Supreme Court, New York County (Carol Berkman, J., at suppression hearing; Annalisa Torres, J., at nonjury trial and sentencing), rendered March 13, 2013, convicting de-

fendant of manslaughter in the first degree, and sentencing her to a term of eight years, unanimously affirmed.

On November 7, 2011, police responded to West 137th Street in New York County and learned from EMS workers at the scene that defendant's companion, Christopher Joseph, had been stabbed. After she came downstairs from the apartment, defendant spoke to a uniformed police officer who asked her what had happened; defendant ultimately gave two different accounts of the stabbing. During the time that the officer was speaking with defendant, police did not search or handcuff her or tell her that she was under arrest.

At the request of police, defendant went to the precinct to discuss the incident with detectives. Once defendant was at the precinct, she spoke with detectives, giving an account in which Joseph had somehow harmed himself in the apartment. Soon after defendant arrived at the precinct, Joseph died from his injuries, but police kept this information from defendant.

Detectives obtained a *Miranda* sheet so that they could read defendant her *Miranda* warnings. At that point, one of the detectives told defendant, based upon her conflicting stories, that she was "more than . . . just . . . a witness," and he sought to ask her more specific questions about the incident. The detective informed defendant that he would read her rights to her before they began speaking again.

The detective wrote defendant's name at the top of the *Miranda* sheet, entitled "INTERROGATION WARNINGS TO PERSON IN CUSTODY," and asked her to answer "yes" or "no" verbally after he read each right. Defendant verbally answered "yes" to each question and the detective marked her affirmative answers on the form. The final question the detective asked from the sheet was whether defendant was willing to answer questions after having been advised of her rights; defendant verbally answered "yes" and the detective so indicated on the form.

However, defendant refused to initial the "yes" responses or sign the bottom of the *Miranda* sheet. Instead, defendant underlined the word "interrogation" several times and told the detective that she was uncomfortable with that word, stating that she did not understand why she was being interrogated. According to the detective's testimony, he told defendant, "[A]t this point you are not being interrogated." However, the detective told defendant, "[W]e want to make sure that you know your rights and that you are aware of your rights. And we are asking you to sign this in agreement that you have been read your rights and have been made aware of your rights." The

detective also told defendant that signing the *Miranda* sheet did not constitute an admission that defendant was admitting anything. Nevertheless, defendant refused to sign the sheet, stating that her verbal responses should be sufficient.

Defendant then gave detectives another account of the incident. She first repeated that Joseph had been injured when he fell to the floor, but after the detective opined that her story made no sense, she changed the account. In the second account, defendant stated that Joseph had physically tried to prevent her from leaving the room after the two had had an argument. According to defendant, she fell to the floor, hoping Joseph would let her go. When Joseph continued to hold defendant down, she picked up a kitchen knife and began to swing it, stabbing Joseph.

The court properly denied defendant's motion to suppress the statements that she made both before and after she received her *Miranda* warnings. The People established that the pre-*Miranda* statements were not the product of custodial interrogation, because a reasonable innocent person in defendant's position would not have thought she was in custody (*see Stansbury v California*, 511 US 318, 325 [1994]; *People v Yukl*, 25 NY2d 585 [1969], *cert denied* 400 US 851 [1970]; *People v Dillhunt*, 41 AD3d 216, 217 [2007], *lv denied* 10 NY3d 764 [2008]). Although the officer at the scene asked defendant some questions about what had happened, questions posed in an attempt to gather information about the circumstances surrounding a possible crime do not constitute custodial interrogation for the purposes of *Miranda* (*see Dillhunt*, 41 AD3d at 217; *Matter of Rennette B.*, 281 AD2d 78, 83 [1st Dept 2001]). Further, there is no evidence that, during the pre-warnings period, any officer compelled defendant to go or remain anywhere, or created the impression that she was not free to leave.

The record also establishes that defendant subsequently received full and effective *Miranda* warnings, and made a knowing and voluntary waiver of her rights before making additional statements. The detective did not make any improper statements of the type discussed in *People v Dunbar* (24 NY3d 304 [2014], *cert denied* 575 US —, 135 S Ct 2052 [2015]), or that otherwise undermined the effect of the *Miranda* warnings. In *Dunbar*, the *Miranda* warnings were coupled with statements that directly contradicted those warnings—namely, statements suggesting that the defendant did not, in fact, have the right to remain silent and that his statements would be used to help him rather than to incriminate him. Here, by

contrast, nothing in the record suggests that police misinformed or misled defendant about her right to remain silent, or about the fact that her statements might be used against her. Nor does the record suggest that police misinformed or misled defendant about any of the other rights recited in the *Miranda* warnings.

Defendant takes issue with the detective's statement that she was "not being interrogated." This statement, defendant asserts, implied that the *Miranda* warnings did not apply to the conversation the detective was about to have with her. We reject this argument. Given the circumstances surrounding the defendant's statements to police at the scene and at the precinct, her objection to the word "interrogation" merely suggested surprise that the police apparently believed her to have committed a crime rather than to simply have witnessed an incident in which Joseph had injured himself. Indeed, defendant reiterated that her verbal responses to the *Miranda* warnings should be sufficient even if she did not sign the *Miranda* sheet, thus evincing her understanding that she had agreed to waive her rights.

Although the police misinformed defendant that Joseph was still alive, defendant made no showing that the deception was so fundamentally unfair as to deny due process, or that a promise or threat was made that could induce a false confession (*see People v Tarsia*, 50 NY2d 1, 11 [1980]). After considering the totality of the circumstances (*see People v Aveni*, 22 NY3d 1114, 1117 [2014]), we conclude that defendant's statements were "the product of [her] own choice" (*People v Thomas*, 22 NY3d 629, 642 [2014]).

Finally, the verdict was not against the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]). There is no basis for disturbing the court's credibility determinations. Concur—Friedman, J.P., Sweeny, Renwick, Andrias and Moskowitz, JJ.