# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**582**

**KA 12-01076**

PRESENT: SCUDDER, P.J., CENTRA, CARNI, LINDLEY, AND DEJOSEPH, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                                MEMORANDUM AND ORDER

ROBIN KALINOWSKI, DEFENDANT-APPELLANT.

---

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (ROBERT L. KEMP OF COUNSEL), FOR DEFENDANT-APPELLANT.

FRANK A. SEDITA, III, DISTRICT ATTORNEY, BUFFALO (NICHOLAS T. TEXIDO OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Erie County (Penny M. Wolfgang, J.), rendered April 5, 2012. The judgment convicted defendant, upon a jury verdict, of murder in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: On appeal from a judgment convicting her following a jury trial of murder in the second degree (Penal Law § 125.25 [1]), defendant contends that the evidence is legally insufficient to establish that she intended to kill the victim, and that the verdict is against the weight of the evidence in that regard. We reject those contentions. Defendant was charged with intentionally killing her husband by shooting him in the back of the head with a .22 caliber rifle while he was sleeping in bed. Although defendant admits that she fired the fatal shot, she asserts that the gun discharged accidently when she picked it up off of the bed, and that she did not intend to kill the victim. The evidence at trial established, however, that the victim sustained a contact wound to the back of his head, which is not consistent with defendant's claim that the gun accidently discharged when she picked it up off of the bed. According to defendant's reenactment of the shooting, which was videotaped by the police and played for the jury, defendant was holding the rifle in a manner such that its barrel would not come into direct contact with the victim's head.

Moreover, the medical evidence established that the bullet entered the victim's skull near the middle of his head and traveled downward toward the base of the skull. If the shooting happened as defendant described in her video reenactment and other statements, the bullet would have had an upward trajectory. A firearms expert who test-fired the rifle testified that it was in proper working

condition, which is contrary to defendant's assertion that the gun needed to be fixed and that the victim was fixing it in the bedroom on the night of the shooting. The expert further testified that it took five to seven pounds of pressure to pull the rifle's trigger, which he described as a "substantial trigger pull" and not a "hair trigger." Thus, the expert concluded, the rifle would not fire if a person "just touch[ed] or tap[ped]" the trigger. That testimony undermined defendant's claim that the rifle discharged when it slipped out of her hands.

The People also presented evidence that the victim, an experienced hunter, was very safe with his guns and would not have left a loaded rifle on his bed with the safety in the off position. Defendant's own brother described the victim at trial as "Mr. Safety." In addition, defendant told inconsistent stories about how the shooting occurred, and she made numerous admissions to fellow inmates while in jail awaiting trial. Finally, although defendant told the police that there were no problems with her marriage, the People presented evidence at trial that she was having an affair with another man when the victim was shot, and that after the shooting she told her paramour not to tell the police about their affair. When defendant learned that the paramour intended to testify for the prosecution at trial, defendant conspired with an undercover police officer, who defendant thought was a hit man, to have her paramour murdered. Defendant later pleaded guilty to conspiracy in the second degree as a result of her attempt to murder the witness, and evidence of her plea was entered at trial.

Viewing the evidence in the light most favorable to the People, as we must (see People v Contes, 60 NY2d 620, 621), we conclude that there is a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial," i.e, that defendant intended to kill the victim (People v Bleakley, 69 NY2d 490, 495; see People v Cooper, 59 AD3d 1052, 1052-1053, lv denied 12 NY3d 852; People v Tyes, 30 AD3d 1045, 1046, lv denied 7 NY3d 795). Based upon our independent review of the evidence pursuant to CPL 470.15 (5), and viewing the evidence in light of the elements of the crime as charged to the jury (see People v Danielson, 9 NY3d 342, 349), we further conclude that the verdict is not contrary to the weight of the evidence (see generally Bleakley, 69 NY2d at 495). Although a different verdict would not have been unreasonable in light of defendant's testimony that the shooting was accidental, "the jury was in the best position to assess the credibility of the witnesses and, on this record, it cannot be said that the jury failed to give the evidence the weight it should be accorded" (People v Orta, 12 AD3d 1147, 1147, lv denied 4 NY3d 801; see People v Canfield, 111 AD3d 1396, 1397, lv denied 22 NY3d 1087; People v Woods, 26 AD3d 818, 819, lv denied 7 NY3d 765).

We reject defendant's further contention that Supreme Court erred in allowing the People to present evidence at trial of her conspiracy to murder her former paramour in order to prevent him from testifying at trial. Evidence that defendant attempted to kill a prosecution witness is admissible as evidence of her consciousness of guilt (see

*People v Pawlowski*, 116 AD2d 985, 986, *lv denied* 67 NY2d 948; *see also People v Arguinzoni*, 48 AD3d 1239, 1240, *lv denied* 10 NY3d 859; *People v Maddox*, 272 AD2d 884, 885, *lv denied* 95 NY2d 867), and its prejudicial effect did not outweigh its probative value (*see generally People v Ventimiglia*, 52 NY2d 350, 359-360).

We have reviewed defendant's remaining contentions and conclude that they lack merit.

Entered:  June 20, 2014                          Frances E. Cafarell
                                                 Clerk of the Court