# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1352**

**KA 15-00249**

PRESENT: CENTRA, J.P., PERADOTTO, CARNI, LINDLEY, AND DEJOSEPH, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                           MEMORANDUM AND ORDER

TAYLOR D. CARBONARO, DEFENDANT-APPELLANT.

---

THE ABBATOY LAW FIRM, PLLC, ROCHESTER (DAVID M. ABBATOY, JR., OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LEAH R. MERVINE OF COUNSEL), FOR RESPONDENT.

-------------------------------------------------------------------------------

    Appeal from a judgment of the Monroe County Court (Victoria M. Argento, J.), rendered January 27, 2015.  The judgment convicted defendant, upon a jury verdict, of manslaughter in the second degree, vehicular manslaughter in the second degree, driving while intoxicated, a misdemeanor (two counts) and reckless driving.

    It is hereby ORDERED that the judgment so appealed from is unanimously affirmed and the matter is remitted to Monroe County Court for proceedings pursuant to CPL 460.50 (5).

    Memorandum:  Defendant appeals from a judgment convicting him following a jury trial of manslaughter in the second degree (Penal Law § 125.15 [1]), vehicular manslaughter in the second degree (§ 125.12 [1]), reckless driving (Vehicle and Traffic Law § 1212), and two counts of driving while intoxicated (§ 1192 [2], [3]).  The charges arose from an automobile accident that resulted in the death of defendant's girlfriend (decedent).  The accident occurred when a vehicle occupied by defendant and decedent veered off the road at a high speed and struck a utility pole and then a tree.  The primary issue at trial was whether defendant was operating the vehicle at the time of the accident.  The jury rendered a guilty verdict on all counts of the indictment, evidently resolving that factual issue against defendant.

    Defendant failed to preserve for our review his contention that the trial evidence is legally insufficient to establish that he was operating the vehicle at the time of the accident.  Although defendant moved at the close of the People's case for a trial order of dismissal on the ground that the People failed to prove that element of the crimes charged, he did not renew the motion after the defense rested (*see People v Hines*, 97 NY2d 56, 61, *rearg denied* 97 NY2d 678; *People v Nichols*, 89 AD3d 1503, 1504).  In any event, we conclude that the

contention is without merit.  The evidence established that defendant admitted three separate times to the police that he was driving the vehicle and that, during the ambulance ride to the hospital, he told a paramedic that he "screwed up," he was sorry, and he had never done "this before."  Defendant also admitted that he was driving to an ex-girlfriend who visited him in the hospital while he was recovering from the injuries he sustained in the accident.  The ex-girlfriend testified, "He told me that he went to the bar with [decedent] and before leaving the bar they got in an argument and he told me he remembers driving like speeding because he was angry."  She further testified that, several months later, defendant called her and said that he had good news, i.e., that his statements to the police were "getting tossed out," and that, if the charges were dismissed, he would use "this as a second chance to start school."

Further, the evidence established that the vehicle was registered to defendant, and that decedent did not even have a driver's license.  According to decedent's father, with whom she and defendant lived, decedent to his knowledge never had driven the vehicle.  In addition, an acquaintance of the couple who was at the bar drinking with them before the accident testified that he saw defendant leave the bar with keys in his hand and say, "I'm going home."  That witness also testified that decedent followed defendant down the street, presumably to the vehicle.  Yet another witness testified that, when he saw the vehicle in question speeding down the road moments before the accident, the driver was "slouching" down in the driver's seat and leaning on the center console.  Decedent was only four feet, nine inches tall, seven inches shorter than defendant, making it unlikely that she could have been so positioned while operating the vehicle.

We also note that defendant's expert witness agreed with the People's expert that the driver was ejected almost immediately after the vehicle struck the tree, and that the passenger was in the vehicle for a longer period of time after the collision, thus subjecting the passenger to more injuries.  Defendant sustained only a fractured leg and a cut to his head, while decedent suffered many more injuries of greater severity.  It is undisputed that decedent's blood was found on the front passenger's seat, and none of defendant's blood was found anywhere in the vehicle.  Decedent's body was found lying next to the stopped vehicle, directly outside the driver's door, as if she had fallen out, while defendant was found some 20 to 30 feet away from the vehicle, trapped under a trailer.  Finally, defendant had a compression injury to his left leg that appeared to have been caused by his leg striking the window crank on the driver's door, and the Medical Examiner testified to a reasonable degree of medical certainty that such injury was caused by the window crank.

To be sure, defendant attempted at trial to explain or controvert the above evidence, and there is other evidence suggesting that decedent may have been operating the vehicle.  In determining whether the evidence is legally sufficient, however, we must view the evidence in the light most favorable to the People (*see People v Cabey*, 85 NY2d 417, 420; *People v Contes*, 60 NY2d 620, 621), and afford them the benefit of every favorable inference (*see People v Bleakley*, 69 NY2d

490, 495).  Applying that standard of review, we conclude that the evidence is more than sufficient to establish that defendant was operating the vehicle at the time of the accident.

Moreover, viewing the evidence in light of the elements of the crimes as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), we reject defendant's further contention that the verdict is against the weight of the evidence (*see generally Bleakley*, 69 NY2d at 495).  Defendant's contention is based largely on his assertion that the medical evidence conclusively establishes that decedent was operating the vehicle.  According to defendant, the injuries sustained by decedent could have come only from her head striking the steering wheel, which was bent toward the front windshield.  We reject that assertion.  Although that medical evidence is probative, it is not conclusive.  As the People's expert testified, decedent's injuries could have occurred by her head striking the center console or some other part of the vehicle's interior other than the steering wheel.

Moreover, defendant's expert agreed that decedent emerged from the vehicle through the driver's door, which opened upon impact, and it is therefore possible that her head or face came into contact with the steering wheel after the vehicle's initial impact with the utility pole.  As noted above, both experts agreed that the driver was ejected from the vehicle almost immediately upon impact with the tree.  Because the air bag in the steering wheel deployed immediately, then quickly deflated, and the driver's body was pushed sharply to the left, and not forward, it is entirely possible, as the People's expert opined, that the driver's head never struck the steering wheel.  In sum, we conclude that, although a different verdict would not have been unreasonable, it cannot be said that the jury failed to give the evidence the weight it should be accorded (*see People v Kalinowski*, 118 AD3d 1434, 1436, *lv denied* 23 NY3d 1064; *People v Hennings*, 55 AD3d 1393, 1393, *lv denied* 12 NY3d 758).

Defendant next contends that his *Miranda* rights were violated and that County Court therefore erred in refusing to suppress statements he made to a sheriff's deputy at the accident scene and at the hospital, subsequent statements he made to an investigator, as well as the results of a blood test conducted at the hospital showing that he was intoxicated.  We conclude that the court properly refused to suppress that evidence.  The first statement defendant sought to suppress was his admission to the deputy at the accident scene that he had "too much to drink" and that he had been driving the vehicle.  The deputy's questioning of defendant at that time, however, was "merely investigatory and did not constitute custodial interrogation to which *Miranda* is applicable" (*People v Saunders*, 174 AD2d 700, 701; *see People v Williams*, 81 AD3d 993, 993, *lv denied* 16 NY3d 901; *People v Palmiere*, 124 AD2d 1016, 1016).

We further conclude that defendant was not in custody when he was questioned by the same deputy in the hospital trauma bay, where defendant again admitted that he was driving, and that such admission therefore was not obtained in violation of defendant's *Miranda* rights (*see People v Rounds*, 124 AD3d 1351, 1352, *lv denied* 25 NY3d 1077;

*People v Gore*, 117 AD3d 845, 846, *lv denied* 24 NY3d 1084).  "In determining whether a defendant was in custody for *Miranda* purposes, '[t]he test is not what the defendant thought, but rather what a reasonable [person], innocent of any crime, would have thought had he been in the defendant's position' " (*People v Kelley*, 91 AD3d 1318, 1318, *lv denied* 19 NY3d 963, quoting *People v Yukl*, 25 NY2d 585, 589, *cert denied* 400 US 851).  Here, defendant was not restrained in any way by the police while at the hospital, and the questioning by the deputy was investigatory and not accusatory in nature (*see People v Drouin*, 115 AD3d 1153, 1155-1156, *lv denied* 23 NY3d 1019; *People v O'Hanlon*, 5 AD3d 1012, 1012, *lv denied* 3 NY3d 645; *People v Ripic*, 182 AD2d 226, 231-232, *appeal dismissed* 81 NY2d 776).

Inasmuch as it is common knowledge that the police prepare reports with respect to motor vehicle accidents even where no criminal conduct is suspected, we conclude that a reasonable, innocent person in defendant's position at the hospital would not have felt that he or she was in custody when asked questions about the accident by the deputy (*see generally People v Borukhova*, 89 AD3d 194, 212-213, *lv denied* 18 NY3d 881, *reconsideration denied* 18 NY3d 955).  Instead, a reasonable, innocent person would have thought that the deputy was "still in the process of gathering information about the [accident] prior to taking any action" (*People v Dillhunt*, 41 AD3d 216, 217, *lv denied* 10 NY3d 764; *see People v Taylor*, 57 AD3d 327, 328, *lv denied* 12 NY3d 860).  Although defendant was in custody when he was subsequently interviewed by the investigator, he knowingly and voluntarily waived his *Miranda* rights before speaking to the investigator (*see People v Allen*, 104 AD3d 1170, 1171, *lv denied* 21 NY3d 1001; *People v Hernandez*, 67 AD3d 820, 820-821, *lv denied* 13 NY3d 939).

Defendant nevertheless contends that all of his statements to the police should have been suppressed because, owing to his injuries and the pain medication he was given at the hospital, he was incapable of making voluntary statements.  Similarly, defendant contends that he was unable to voluntarily waive his *Miranda* rights and consent to the blood test at the hospital.  We reject those contentions.  Even assuming, arguendo, that defendant's thought process was affected by his head injury and the pain he experienced from his fractured leg, we conclude that the record does not support a finding that he was "unable to understand the meaning of his statements" (*People v Schompert*, 19 NY2d 300, 305).  Defendant responded appropriately to questions asked of him by the deputy and the medical personnel who treated him.  For instance, when questioned by a nurse at the hospital, defendant was able to state his name, his date of birth, and the reason he was at the hospital.  According to the nurse, who testified at the *Huntley* hearing, defendant was aware of his surroundings and did not appear to have difficulty understanding anything that she said.  Furthermore, when speaking to the deputy at the hospital, defendant recalled the name of the bar he was at earlier that evening, and accurately stated the name of the road on which the accident occurred.  As the court noted in its suppression decision, at no time did defendant "give nonsensical or otherwise inappropriate

answers to questions, nor did he ramble or rant on unrelated topics."
Under the circumstances, we conclude that defendant's cognitive
ability was not so impaired as to render him unable to make voluntary
and trustworthy statements (*see generally People v Meissler*, 305 AD2d
724, 725-726, *lv denied* 100 NY2d 644; *People v Mercado*, 198 AD2d 380,
381, *lv denied* 82 NY2d 927; *People v Pearson*, 106 AD2d 588, 588-589),
or to waive his *Miranda* rights knowingly and voluntarily (*see People v
Torres*, 220 AD2d 785, 786, *lv denied* 87 NY2d 908; *People v Butler*, 175
AD2d 252, 253, *lv denied* 79 NY2d 854).

We have reviewed defendant's remaining contentions and conclude
that they lack merit.

Entered:  December 31, 2015                        Frances E. Cafarell
                                                   Clerk of the Court