Appeal by the defendant from a judgment of the County Court, Westchester County (Warhit, J.), rendered March 4, 2011, convicting him of criminal possession of a weapon in the second degree and unlawful possession of marijuana (two counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Cacace, J.), of those branches of the defendant’s omnibus motion which were to suppress physical evidence and his statements to law enforcement officials.
Ordered that the judgment is reversed, on the law, that branch of the defendant’s omnibus motion which was to suppress his statements to law enforcement officials is granted, and a new trial is ordered.
*815 On January 15, 2010, at approximately 9:30 p.m., a police officer on routine patrol observed a vehicle, occupied by the defendant and two others (hereinafter the defendant’s vehicle), parked in a desolate area across from a homeless shelter in Peekskill. The defendant’s vehicle had its amber warning lights activated, but not its headlights.
The officer parked his patrol vehicle, “nose-to-nose,” at a 90 degree angle with the defendant’s vehicle. The officer approached the defendant’s vehicle and smelled a strong odor of unburnt marijuana coming from the defendant’s vehicle’s open window. The officer then asked if any of the occupants had “anything illegal.” The defendant, who was seated in the driver’s seat, produced a small bag containing marijuana. The officer asked the defendant to step out of the vehicle “as he was now under arrest for unlawful possession of marijuana.”
The officer once again approached the defendant’s vehicle and continued to smell a strong odor of unburnt marijuana. He requested that the other two occupants exit the vehicle. The officer then conducted a search of the vehicle, and discovered two bags of marijuana under the driver’s seat. The officer approached the defendant and asked if the bags of marijuana were his, and the defendant replied “yes,” and “that’s all there is.” The officer continued to search the defendant’s vehicle, whereupon he recovered a gun from a backpack located on the floor of the front passenger area.
The defendant was transported to the police precinct without having yet been advised of his Miranda rights (see Miranda v Arizona, 384 US 436 [1966]). At approximately 2:00 a.m., on January 16, 2010, the defendant was advised of his Miranda rights by a detective. After being advised of his rights, the defendant declined to speak to the detective. Approximately two hours later, while processing the defendant, the arresting officer told the defendant that if no one confessed to ownership of the gun everyone inside the defendant’s vehicle would be “equally charged.” The defendant requested an opportunity to speak with a detective. At approximately 4:20 a.m., the defendant was advised of his Miranda rights for the second time. Thereafter, in a videotaped statement, the defendant admitted that the gun belonged to him.
The defendant moved, inter alia, to suppress the physical evidence and his statements to the police. After a hearing, those branches of his motion were denied. Thereafter, the defendant was convicted, upon a jury verdict, of criminal possession of a weapon in the second degree and two counts of unlawful possession of marijuana.
*816 The defendant’s admission that he was the owner of the two bags of marijuana found under the driver’s seat should have been suppressed. The Miranda warnings are procedural safeguards intended to secure the Fifth Amendment privilege against self-incrimination by protecting individuals from the informal compulsion exerted by law enforcement officials during custodial questioning (see Miranda v Arizona, 384 US at 444, 461; People v Paulman, 5 NY3d 122, 129 [2005]; People v Berg, 92 NY2d 701, 704 [1999]; People v Borukhova, 89 AD3d 194, 211-212 [2011]). “The standard for assessing whether an individual is in custody for purposes of applying the Miranda rule is whether a reasonable person innocent of any wrongdoing would have believed that he or she was free to leave the presence of the police” (People v Borukhova, 89 AD3d at 212; see People v Paulman, 5 NY3d at 129; People v Yukl, 25 NY2d 585, 589 [1969], cert denied 400 US 851 [1970]).
Applying this standard here, we find that the evidence presented at the Huntley hearing (see People v Huntley, 15 NY2d 72 [1965]) supports the defendant’s contention that he was in custody when he admitted to the arresting officer at the scene of the arrest that the two bags of marijuana found under the seat were his. A reasonable person innocent of any wrongdoing would not have believed that he or she was free to leave the presence of the police when he made that statement. Thus, the duty to administer Miranda warnings was triggered prior to his admission to the ownership of the two bags of marijuana.
Further, the defendant’s statement at the precinct that he was the owner of the gun should have been suppressed as well. When the defendant was given his initial Miranda warnings, he clearly stated that he wished to remain silent, thereby invoking his privilege against self-incrimination under the New York State and United States Constitutions. “If [an] individual indicates in any manner, at any time prior to or during questioning, that he [or she] wishes to remain silent, the interrogation must cease” (Miranda v Arizona, 384 US at 473-474; see People v Ferro, 63 NY2d 316, 322 [1984], cert denied 472 US 1007 [1985]). Here, the arresting officer failed to “scrupulously hon- or” the defendant’s constitutional rights when he deliberately engaged the defendant in conversation for the purpose of inducing the defendant to change his mind and make an incriminating statement about the ownership of the gun (Miranda v Arizona, 384 US at 479). When the arresting officer told the defendant that, unless someone confessed to ownership of the gun, all three occupants of the car would be charged with its possession, he was engaging in the functional equivalent of *817 interrogation in that he knew or should have known that his comments were reasonably likely to elicit an incriminating response (see Rhode Island v Innis, 446 US 291, 301 [1980]; People v Ferro, 63 NY2d at 319, 322; People v Creary, 61 AD3d 887, 889 [2009]; People v Kollar, 305 AD2d 295, 297 [2003]). Because the arresting officer’s conversation with the defendant constituted impermissible interrogation in violation of the defendant’s constitutional rights against self incrimination, the defendant’s videotaped statement admitting to ownership of the gun, elicited by that conversation, should have been suppressed (see People v Kollar, 305 AD2d at 299). Under the circumstances of this case, the errors in denying suppression of the aforementioned statements were not harmless (see People v Crimmins, 36 NY2d 230 [1975]). Therefore, a new trial is required.
The defendant’s remaining contentions are without merit. Rivera, J.P., Lott, Roman and Sgroi, JJ., concur.