■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY REARDON, Appellant. [1 NYS3d 289]—

Appeal by the defendant from a judgment of the Supreme Court, Richmond County (Rooney, J.), rendered June 10, 2009,

convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials.

Ordered that the judgment is affirmed.

In December 2007, the defendant's 22-day-old daughter (hereafter the infant) died after having been alone in a room with the defendant and the defendant's other child, who was 18 months old at the time. The infant's autopsy revealed five cranial fractures, significant subdural bleeding, and hemorrhages on the retina and optic nerves, all indicative of injuries consistent with shaken baby syndrome and blunt force trauma to the child's head. On the day of the incident, the defendant told law enforcement officials and emergency personnel conflicting stories—one in which the infant was hit in the head with a flashlight by the older child and the other in which the infant fell from the top bunk of a bunk bed on which she had been sleeping with the defendant.

Approximately three weeks after the infant's death, in January 2008, while the defendant was leaving the New York City Office of Chief Medical Examiner, the car in which he was traveling was stopped by two police cars, carrying a total of four detectives. One of the cars had its lights activated and had stopped in front of the defendant's vehicle, preventing the vehicle from continuing. Two detectives then approached the defendant's car from each side and asked the defendant and his girlfriend to accompany them to the police station to answer questions. Both agreed, and the defendant was transported to the police station in the back of a police car. Upon arriving at the police station, the defendant was placed in a locked interview room and the police refused his request to speak with his girlfriend. Before any *Miranda* warnings (*see Miranda v Arizona*, 384 US 436 [1966]) were administered, the police asked the defendant to recount what occurred on December 21, 2007. The defendant admitted that the story he had told about the older child hitting the infant with the flashlight was not true, and said that he fell asleep while cradling the infant in his arms while he was on the top bunk of a bunk bed. He then woke up to the infant's screams, and saw her face down on the floor. When asked whether he used drugs, the defendant indicated that he occasionally smoked marijuana.

After a short break, the detectives told the defendant that his story was not consistent with the autopsy results and told him that he had lied about the incident and about his drug use. In

response, the defendant told the police that the infant may have hit her head on the dresser or the bed when she fell from the bunk bed and that when he picked her up, her head hit the bed frame and he may have hit her head against the wall when he was picking her up and consoling her. The defendant also admitted that he had smoked crack cocaine on the day of the incident. The police then administered *Miranda* warnings, after which the defendant agreed to give a written statement.

The defendant was subsequently indicted and charged with one count of murder in the second degree. The defendant moved to suppress his statements to law enforcement officials on the ground that they were the product of custodial interrogation without the benefit of *Miranda* warnings. After a hearing, the suppression court determined that the defendant was not in custody when he made his oral statements at the police station, and denied his motion. After a jury trial, the defendant was convicted of murder in the second degree.

Contrary to the suppression court's determination, the statements made by the defendant at the police station should have been suppressed as the product of custodial interrogation conducted without the benefit of *Miranda* warnings. "*Miranda* warnings need not be given until both the elements of police 'custody' and 'interrogation' are present" (*People v Kittell*, 135 AD2d 1021, 1022 [1987]; *see People v Huffman*, 41 NY2d 29, 33 [1976]; *People v Valentin*, 118 AD3d 823 [2014]). The issue of whether a suspect is in custody is generally a question of fact (*see People v Centano*, 76 NY2d 837, 837-838 [1990]; *People v Wilson*, 261 AD2d 560 [1999]). In deciding whether a defendant was in custody before receiving *Miranda* warnings, "the subjective beliefs of the defendant are not to be the determinative factor" (*People v Yukl*, 25 NY2d 585, 589 [1969]). Nor does the determination turn on the subjective intent of the police officer (*see People v Tavares-Nunez*, 87 AD3d 1171, 1174 [2011]). Rather, the test is "what a reasonable man [or woman], innocent of any crime, would have thought had he [or she] been in the defendant's position" (*People v Yukl*, 25 NY2d at 589; *see People v Tavares-Nunez*, 87 AD3d at 1174; *People v Payne*, 41 AD3d 512, 513 [2007]). "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect" (*Rhode Island v Innis*, 446 US 291, 301 [1980]; *see People v Tavares-Nunez*, 87 AD3d at 1172).

Here, a reasonable, innocent person would not have believed

that he or she was free to leave the police station at the time the defendant made his oral statements to the police (*see People v Tavares-Nunez*, 87 AD3d at 1173; *People v Payne*, 41 AD3d at 513). Moreover, the questions by the police were accusatory in nature, rather than merely investigatory, and were designed to elicit an incriminating response (*see People v Baggett*, 57 AD3d 1093, 1095 [2008]; *People v Tankleff*, 199 AD2d 550, 554-555 [1993], *affd* 84 NY2d 992 [1994]). Accordingly, the oral statements made by the defendant at the police station were the product of custodial interrogation without *Miranda* warnings and should have been suppressed. Furthermore, the written statement by the defendant, although created after *Miranda* warnings were issued, also should have been suppressed, as there was no attenuation between the statements that were obtained unlawfully and the written statement (*see People v Payne*, 41 AD3d at 513).

Although the statements should have been suppressed, we are satisfied that the admission into evidence of these statements was harmless error. The proof of the defendant's guilt, without reference to the improperly admitted statements, was overwhelming, and there is no reasonable possibility that the jury would have acquitted him had it not been for this constitutional error (*see People v Gillyard*, 13 NY3d 351, 356 [2009]; *People v Paulman*, 5 NY3d 122, 134 [2005]; *People v Crimmins*, 36 NY2d 230, 237, 241-242 [1975]; *see also People v Payne*, 41 AD3d at 514). The testimony of the defendants' parents, and the testimony of the mother of the infant, as well as telephone records, established that the defendant was alone with the infant and his other child, who was 18 months old at the time, when the infant was injured and that, when the children's mother returned, the defendant stated that they needed to take the infant to the hospital. In addition, the defendant's noncustodial statements made to police officers, emergency personnel, investigators from the Administration for Children's Services and other individuals, which were properly admitted into evidence, provided numerous, contradictory accounts of how the infant was injured. None of these accounts was supported by the medical evidence, which was consistent with the infant being violently shaken and intentionally struck with significant blunt force. Finally, a jailhouse informer testified that, in April 2009, while he was incarcerated at Rikers Island, the defendant told him that the infant had been crying while the defendant was smoking crack and the defendant had grabbed the infant, shook her head, and banged her head on the back of the crib three times. Accordingly, the error was harmless (*see People v Gillyard*, 13 NY3d 351, 356 [2009]; *People v Paulman*, 5 NY3d at 134; *People v Crimmins*, 36 NY2d at 241-242).

Contrary to the defendant's contention, his inculpatory statements to a jailhouse informer were admissible. "[W]here an informer works independently of the prosecution, provides information on his own initiative, and the government's role is limited to the passive receipt of such information, the informer is not, as a matter of law, an agent of the government" (*People v Cardona*, 41 NY2d 333, 335 [1977]). Here, the informer acted independently and on his own initiative, and the prosecution was a passive recipient of the information (*see People v Corse*, 73 AD3d 1208, 1209 [2010]).

In fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15 [5]; *People v Danielson*, 9 NY3d 342 [2007]), we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633 [2006]).

The defendant waived his current contention that the testimony of his drug purchase the day after the incident should not have been admitted (*see* CPL 470.05 [2]; *People v Green*, 92 AD3d 953, 954-955 [2012]).

The sentence imposed was not excessive (*see People v Suitte*, 90 AD2d 80 [1982]). Balkin, J.P., Cohen, Duffy and LaSalle, JJ., concur.