People v Brown (2019 NY Slip Op 08206)





People v Brown


2019 NY Slip Op 08206


Decided on November 13, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 13, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LEONARD B. AUSTIN, J.P.
COLLEEN D. DUFFY
VALERIE BRATHWAITE NELSON
LINDA CHRISTOPHER, JJ.


2014-09106
 (Ind. No. 146/13)

[*1]The People of the State of New York, respondent,
v
Edward Brown, appellant.


Charles E. Holster III, Garden City, NY, for appellant, and appellant pro se.
Madeline Singas, District Attorney, Mineola, NY (Judith R. Sternberg and Hilda Mortensen of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Alan L. Honorof, J.), rendered September 11, 2014, convicting him of murder in the second degree, grand larceny in the fourth degree, and criminal possession of stolen property in the fifth degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Tammy S. Robins, J.), of that branch of the defendant's omnibus motion which was to suppress his written statement to law enforcement officials and a map.
ORDERED that the judgment is affirmed.
On the evening of December 17, 2012, Nunzio Izzo (hereinafter the victim) spent the evening at a companion's home, where the defendant also resided. The victim failed to return home, and his family reported him missing to the Glen Cove Police Department on December 19, 2012. On January 2, 2013, Glen Cove Police detectives, assisted by the Nassau County Police Department homicide squad, located the defendant at a hotel. Two Nassau County detectives went to the defendant's hotel room, told him they were assisting Glen Cove detectives on a missing person case, and asked him to accompany them to the police station for an interview, which he agreed to do. During the course of the interview, which spanned approximately 2½ hours, the defendant admitted to hitting the victim on December 17, 2012, at which point all questioning ceased and the detectives administered Miranda warnings (see Miranda v Arizona, 384 US 436). The defendant then gave a written statement to the police admitting that he killed the victim and stole and pawned his rings. The defendant also helped the detectives draw a map showing where the defendant hid the body.
The defendant was charged with murder in the second degree (Penal Law § 125.25[1]), grand larceny in the fourth degree (Penal Law § 155.30[5]), and criminal possession of stolen property in the fifth degree (Penal Law § 165.40). The defendant moved, inter alia, to suppress the written statement and the map on the ground that they were taken in violation of his Miranda rights (see Miranda v Arizona, 384 US 436). The People consented to a Huntley hearing (see People v Huntley, 15 NY2d 72). After the hearing, the Supreme Court denied those branches of the defendant's omnibus motion which were to suppress the written statement and the map, finding that the defendant was not in custody when they were made. At trial, the jury found the defendant guilty of murder in the second degree, grand larceny in the fourth degree, and criminal [*2]possession of stolen property in the fifth degree. The defendant appeals.
"The Miranda rule protects the privilege against self-incrimination and, because the privilege applies only when an accused is compelled to testify, the safeguards required by Miranda are not triggered unless a suspect is subject to "custodial interrogation" (People v Paulman, 5 NY3d 122, 129 [internal quotation marks omitted; see People v Berg, 92 NY2d 701, 704). "The standard for assessing a suspect's custodial status is whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" (People v Paulman, 5 NY3d at 129; see People v Harris, 48 NY2d 208, 215; People v Torres, 172 AD3d 758, 760; People v Jackson, 103 AD3d 814, 816). The issue of whether a suspect is in custody is generally a question of fact (see People v Reardon, 124 AD3d 681, 683), and does not turn on the subjective beliefs of the defendant (see People v Yukl, 25 NY2d 585, 589), or the subjective intent of the police officer (see People v Reardon, 124 AD3d at 683). "The factors to be weighed include the amount of time which the defendant spent with the police, the manner, if any, in which his freedom was restricted, the location and atmosphere of his questioning, the degree of cooperation which he exhibited, whether he was apprised of his constitutional rights, and whether the questioning was investigatory or accusatory in nature" (People v Petrovich, 202 AD2d 523, 524, affd 87 NY2d 961; see People v Blake, 177 AD2d 636, 636).
Giving deference to the hearing court's credibility determinations (see People v Baggett, 57 AD3d 1093, 1094), the court's conclusion that the defendant was not in police custody before he was administered Miranda rights and made the written statement and map is supported by the record (see People v Gelin, 128 AD3d 717, 718; People v Floyd, 85 AD3d 1052, 1053; People v Martin, 68 AD3d 1015, 1016). The hearing testimony established that the defendant voluntarily accompanied the police to the police station, brought his personal items with him, and was not handcuffed. At the police station, the defendant was brought to a conference room, where the door was kept unlocked, and was offered food, water, and the opportunity to use the bathroom. During the interview, the defendant was not handcuffed and had his personal belongings with him, including his cell phone (see People v Meyer, 119 AD3d 876; People v Foy, 26 AD3d 344, 344; People v Delfino, 234 AD2d 382, 383). The fact that the detectives confronted the defendant with evidence that he had pawned the victim's rings prior to the interview and identified inconsistencies in the defendant's explanation of how he obtained the rings did not render the interview custodial in nature under the circumstances (see People v Morris, 173 AD3d 1797, 1799; People v Brown, 153 AD3d 1664, 1664; People v Davis, 48 AD3d 1086, 1087; People v Hernandez, 25 AD3d 377, 378). Accordingly, we agree with the hearing court's determination to deny that branch of the defendant's omnibus motion which was to suppress the defendant's written statement to the police and the map.
In light of our determination, we need not reach the defendant's remaining contentions regarding the hearing court's determination.
The defendant's contentions in his pro se supplemental brief are without merit.
AUSTIN, J.P., DUFFY, BRATHWAITE NELSON and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court