The People of the State of New York, Respondent,
against
Mark Smith, Appellant.




Mark Diamond, for appellant.
Queens County District Attorney (John M. Castellano, Johnnette Traill, Ellen C. Abbot and John F. McGoldrick of counsel), for respondent.

Appeal from a judgment of the Criminal Court of the City of New York, Queens County (Ushir Pandit-Durant, J.), rendered December 13, 2017. The judgment convicted defendant, after a nonjury trial, of attempted criminal contempt in the second degree, and imposed sentence. The appeal from the judgment of conviction brings up for review an order of that court (John Zoll, J.) dated June 29, 2017, denying defendant's motion to suppress statement evidence.




ORDERED that the judgment of conviction is reversed, on the facts, and the accusatory instrument is dismissed.
Defendant was convicted, after a nonjury trial, of a single count of attempted criminal contempt in the second degree (Penal Law §§ 110.00, 215.50 [3]) based upon allegations by the complainant, defendant's ex-girlfriend, that he had violated a Family Court temporary order of protection. Prior to the trial, a Dunaway/Huntley hearing was held in which investigating Police Officer Cory Smith (no relation to defendant) testified that he had reviewed the Family Court order of protection, and a domestic incident report completed by the complainant in which she alleged that, on March 23, 2016, at approximately 8:20 a.m., as she was walking to the train station, defendant had attempted to speak with her in violation of the order which, the officer testified, expired "on March 23, 2016 at midnight." The order of protection was not admitted into evidence at the hearing.
Subsequently, Officer Smith placed a telephone call to defendant, who lived out of state, informed him that a complaint had been made against him and requested a meeting to discuss it. Whereupon, the officer testified, defendant
"became irate, started yelling. He referred to the complainant as a heifer multiple times, and then he . . . stated in sum and substance, 'You're not going to get me on a violation of the order of protection. I'll just go to that bitch's house and kill her and do twenty-five years. If you want something to lock me up on, I'll give you something to lock me up on.' "
In an order dated June 29, 2017, the Criminal Court (John Zoll, J.) denied suppression of the aforementioned statement attributed to defendant. Defendant now argues that this denial was erroneous for two reasons, both raised for the first time on appeal. First, he claims that the officer lacked probable cause to believe that defendant had violated the order in attempting to speak with the complainant at 8:20 a.m., approximately 8½ hours after the order of protection had expired, per the investigating officer's testimony. Second, the officer's failure to inform defendant of his Miranda rights before interrogating him requires suppression. Both arguments are unpreserved, and we decline to reach them in the interest of justice.
In any event, both arguments are without merit. "[T]here is conflicting authority regarding whether a day ends at midnight, begins at midnight, or both ends and begins at midnight" (Matter of Stephen & Mark 53 Assoc. LLC v New York City Dept. of Envtl. Protection, 168 AD3d 440, 441 [2019]). As "the word 'midnight' is ambiguous, . . . the court may therefore properly look to the intention of the parties" (Leathersby Ins. Co. v Villafana, 82 Misc 2d 144, 146 [Sup Ct, Suffolk County 1975]). In this case, Officer Smith's testimony during the hearing that the temporary order of protection expired "on March 23, 2016 at midnight," is best interpreted as referring to the end of that date, not the beginning, in light of the officer's firsthand review of the order of protection, which indeed expired at 11:59 p.m. on March 23rd. Thus, the officer possessed, at minimum, a founded suspicion of wrongdoing and a common-law right of inquiry to place a telephone call to defendant (see People v DeBour, 40 NY2d 210, 223 [1976]).
Miranda warnings were not required, as Officer Smith's conversation with defendant was not the equivalent of a custodial interrogation (see People v Reardon, 124 AD3d 681, 683 [2015] ["Miranda warnings need not be given until both the elements of police 'custody' and 'interrogation' are present"]). The officer spoke via telephone with defendant, who was out of state and free to cease communication at any time. Further, defendant did not make the statement attributed to him in response to a question by the officer; it was a nonresponsive outburst after the officer requested a meeting to discuss the complaint. 
At a nonjury trial, the complainant testified that she had obtained the Family Court order of protection in February 2016 after alleging that defendant had poured sugar into her vehicle's gas tank, despite having no direct proof he had done so. According to the complainant, on March 23, 2016 at approximately 8:20 a.m., she left her home and was walking along Jamaica Avenue in Queens County, when "defendant pulled up alongside of me in his vehicle," a dark gray Nissan Altima with a Virginia license plate. The complainant testified that defendant drove alongside her and attempted to talk to her. She took a photograph and recorded a video with her cell phone, causing defendant to drive away. The prosecution introduced the video and photograph into [*2]evidence, as well as a screenshot of the date/time/location stamp from the complainant's phone. 
Defendant testified and denied that he had driven near the complainant's home or that he had attempted to speak with her in the morning of March 23, 2016. Defendant conceded that he drives a dark gray 2008 Nissan Altima with a Virginia license plate, but he asserted that the car in the complainant's video was not his, as its back window was tinted. The back window of his car is not tinted.
Defendant's claim on appeal that the trial evidence was legally insufficient to support his conviction of attempted criminal contempt in the second degree "is unpreserved for our review since defendant made only general motions to dismiss at the end of the People's case and after both sides had rested" (People v Izzo, 57 Misc 3d 149[A], 2017 NY Slip Op 51514[U], *1 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2017]; see CPL 470.05 [2]), and we decline to reach this issue in the interest of justice.
In fulfilling our responsibility to conduct an independent review of the weight of the evidence (see People v Danielson, 9 NY3d 342, 348 [2007]), we accord great deference to the factfinder's opportunity to view the witnesses, hear their testimony and observe their demeanor (see People v Mateo, 2 NY3d 383, 410 [2004]; People v Bleakley, 69 NY2d 490, 495 [1987]). Here, however, we conclude that defendant's conviction was against the weight of the trial evidence.
The 10-second video from the complainant's cell phone began with a dark gray Nissan Altima about a quarter of a block behind where the complainant was filming, and on the opposite side of the four-lane, two-way road. It was driven past the complainant. In light of her own video, the complainant retracted her previous testimony and conceded that, in fact, defendant did not pull up alongside her. The date/time/location stamp from the complainant's cell phone showed that a photograph was taken at 8:21 a.m. on March 23, 2016 in Yonkers, NY Yet, the prosecution proffered no evidence that the time and date stamps were correct, while the location stamp was not. Thus, either the photograph admitted into evidence was taken by the complainant in Yonkers, not Queens, or the stamp pertained to a photograph different from the one admitted into evidence by the prosecution. Either way, the date/time/location stamp calls the complainant's veracity into question, particularly in light of her forced retraction of the self-serving claim that defendant pulled up and drove alongside her. 
Also casting doubt upon the People's proof is what is absent from the photograph and video, namely, defendant and the license plate. All that is visible in the picture was a dark gray Nissan Altima, which is not an uncommon vehicle. Additionally, and contrary to the complainant's testimony that, when she began videotaping defendant, he first was "alongside" her and then drove forward away from her, the car at the start of the video was approximately a quarter of a block behind her. The complainant never testified about defendant driving his car backwards, and no other trial evidence accounts for the car being some distance behind the complainant when she began videotaping.
In light of the inconsistencies in the complainant's testimony, and the doubt created by the People's own physical evidence as to whether the complainant's photograph and video actually captured defendant and his car, the prosecution did not meet its burden of proving defendant's guilt of attempted criminal contempt in the second degree beyond a reasonable doubt.
In view of the foregoing, the other issues raised by defendant are rendered academic, and [*3]we do not pass upon them.
Accordingly, the judgment convicting defendant of attempted criminal contempt in the second degree is reversed and the accusatory instrument is dismissed.
ALIOTTA, J.P., PESCE and ELLIOT, JJ., concur.

ENTER:
Paul Kenny
Chief Clerk
Decision Date: November 22, 2019