People v Buchannan (2020 NY Slip Op 01513)





People v Buchannan


2020 NY Slip Op 01513


Decided on March 4, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 4, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
COLLEEN D. DUFFY
HECTOR D. LASALLE
VALERIE BRATHWAITE NELSON, JJ.


2018-04678
 (Ind. No. 995/16)

[*1]The People of the State of New York, respondent,
v
Shania Buchannan, appellant.


Stephen R. Mahler, Kew Gardens, NY, for appellant.
Madeline Singas, District Attorney, Mineola, NY (Kevin C. King and Michael J. Balch of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Fran Ricigliano, J.), rendered April 10, 2018, convicting her of manslaughter in the second degree, reckless endangerment in the first degree, assault in the first degree, assault in the second degree, assault in the third degree, and reckless driving, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing pursuant to a stipulation in lieu of motions (Jerald S. Carter, J.), of the suppression of the defendant's statements to law enforcement officials.
ORDERED that the judgment is affirmed.
The defendant was charged with multiple offenses arising from an incident on April 20, 2016, during which she drove her motor vehicle into a crowd of people, killing one person and injuring others. At a pretrial suppression hearing, a police officer who responded to the scene testified that he and other officers knocked on the door of the nearby residence of the defendant's mother, which the defendant had entered after the incident. When the officers asked to speak to the occupants, they were invited inside by a teenage girl. Once the officers were inside, the defendant asked to speak to one of the officers in a back room of the residence. The officer asked her "what happened," and the defendant explained that her vehicle had alignment and brake problems, and that she had attempted to avoid the collision by using her vehicle's horn and trying to drive around the crowd. The officers then transported the defendant to the police station. Several hours later, she was taken to an interview room at the homicide squad and was administered Miranda warnings (see Miranda v Arizona, 384 US 436). She acknowledged her rights and agreed to speak with detectives, after which she made statements in response to their questioning.
The hearing court denied suppression of the defendant's statements, determining that the basic investigatory inquiry by the police officer at the residence did not constitute a custodial interrogation warranting the administration of Miranda warnings, and that the statements made by the defendant at the homicide squad likewise were admissible.
The evidence presented by the People at trial established that on April 20, 2016, the defendant's mother and another woman were fighting in the vicinity of the mother's residence in Hempstead. A crowd of 50 to 60 people had gathered to watch the fight. The defendant received [*2]a phone call advising her that people "were beating up her mom." Multiple witnesses testified that, shortly thereafter, the defendant drove her vehicle into the crowd and collided with several people, striking one person in the right leg, knocking a bicyclist unconscious, and fatally injuring another person. None of the witnesses heard a horn honking or saw the defendant's vehicle slow down prior to driving into the crowd. The jury convicted the defendant, inter alia, of manslaughter in the second degree, reckless endangerment in the first degree, and assault in the first degree. The defendant appeals.
The defendant's contention that the police officers unlawfully entered the residence without a warrant to effectuate her arrest (see Payton v New York, 445 US 573) is unpreserved for appellate review, as the defendant failed to advance this argument during the pretrial suppression hearing (see People v Smith, 55 NY2d 888, 890; People v Jones, 62 AD3d 902). In any event, the contention is without merit, as the evidence adduced at the hearing demonstrated that the officers were given consent to enter the premises (see People v Bunce, 141 AD3d 536, 537; People v Starks, 91 AD3d 975, 976; People v Read, 74 AD3d 1245, 1246).
Similarly unavailing is the defendant's contention that her statements made at the residence should have been suppressed because they were not preceded by Miranda warnings. An individual taken into the custody of law enforcement personnel for questioning must be informed of his or her Miranda rights (see US Const Amend V; Miranda v Arizona, 384 US at 467-473). The Miranda warnings are an "absolute prerequisite to interrogation" (Miranda v Arizona, 384 US at 471; see People v Dunbar, 24 NY3d 304, 314). "Interrogation" includes questions that the police should know are reasonably likely to elicit an incriminating response from the suspect (Rhode Island v Innis, 446 US 291, 301; see People v Crawford, 163 AD3d 986, 986-987). Statements made in response to such police words or actions are inadmissible in the absence of Miranda warnings (see People v Dunbar, 24 NY3d at 314).
Here, the hearing court properly determined that the defendant was not subjected to a custodial interrogation, and thus, the court properly denied suppression of her statement to the police officer at the residence. The officers were invited into the residence, and the defendant herself asked to speak to one of the officers. Under the circumstances, the officer's preliminary inquiry of "what happened" was merely investigatory in nature and intended to clarify the situation, and it did not require the officer to first administer Miranda warnings (see People v Brown, 295 AD2d 442, 443; People v Chappelle, 189 AD2d 695). Moreover, the defendant's statements at the homicide squad, which she made voluntarily after acknowledging and waiving her rights, were properly admitted at trial.
Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Contrary to the defendant's contention, the evidence was legally sufficient to establish the "depraved indifference" element of assault in the first degree and reckless endangerment in the first degree (Penal Law §§ 120.10[3]; 120.25; see People v Heidgen, 22 NY3d 259, 276; People v Suarez, 6 NY3d 202, 214; People v Wolz, 300 AD2d 606; People v Ruiz, 159 AD2d 656). Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342, 348), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
The defendant's remaining contention is without merit.
MASTRO, J.P., DUFFY, LASALLE and BRATHWAITE NELSON, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court