People v Hirji (2020 NY Slip Op 04320)





People v Hirji


2020 NY Slip Op 04320


Decided on July 29, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 29, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
ROBERT J. MILLER
JOSEPH J. MALTESE
BETSY BARROS, JJ.


2019-02699
 (Ind. No. 928/17)

[*1]The People of the State of New York, respondent,
v
Areefeen Hirji, appellant.


Jeffrey Lichtman, New York, NY (Jason Goldman of counsel), for appellant.
Madeline Singas, District Attorney, Mineola, NY (Yael V. Levy and Monica M.C. Leiter of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Francis Ricigliano, J.), rendered February 26, 2019, convicting him of manslaughter in the second degree, leaving the scene of an incident without reporting, reckless endangerment in the second degree, making a punishable false written statement, and reckless driving, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials.
ORDERED that the judgment is affirmed.
On February 23, 2017, the defendant, who was driving a white 2017 Honda Accord Sport, and Jonnathan Santos, who was driving a black 2015 BMW, were traveling side-by-side in adjacent lanes of the Long Island Expressway (hereinafter the Expressway) in excess of 110 miles per hour when their vehicles made contact. The collision caused the BMW to start spinning, and it struck a third vehicle and a guardrail. The impact with the guardrail caused the rear passenger door to open and Gianfranco Peralta, who was not wearing a seatbelt, was ejected from the BMW and died at the scene. Santos was arrested at the scene and ultimately pleaded guilty to manslaughter in the second degree. The defendant never stopped, and a witness saw the Honda leave the Expressway at the next exit.
After a trial, the jury convicted the defendant of manslaughter in the second degree, leaving the scene of an incident without reporting, reckless endangerment in the second degree, making a punishable false written statement, and reckless driving.
The defendant contends that his convictions of manslaughter in the second degree, leaving the scene of an incident without reporting, reckless endangerment in the second degree, and reckless driving were against the weight of the credible evidence. In fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342, 348), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt on the counts of manslaughter in the second degree, leaving the scene of an incident without reporting, reckless endangerment in the second degree, and reckless driving was [*2]not against the weight of the evidence (see People v Romero, 7 NY3d 633).
We agree with the Supreme Court's determination to deny the defendant's request for a jury instruction on the statutory exemption to accomplice liability (see Penal Law § 20.10), inasmuch as there is no evidence to support a finding that his conduct was necessarily incidental to Santos' crime (see People v Lee, 56 AD3d 1250, 1252; People v Daddona, 181 AD2d 688, 689-690; see generally People v Manini, 79 NY2d 561, 569-571).
We agree with the Supreme Court's determination denying the defendant's request for a missing witness charge, as the defendant failed to meet his burden of establishing that Santos, the codefendant, would normally be expected to give noncumulative testimony favorable to the People (see generally People v Savinon, 100 NY2d 192, 196; People v Gonzalez, 68 NY2d 424, 427; Buttice v Dyer, 1 AD3d 552, 552-553). Indeed, the testimony of a codefendant who has pleaded guilty is "presumptively suspect," and a prosecutor would not normally be expected to call such a witness at trial (People v Rios, 184 AD2d 244, 245; see CPL 60.22; People v Bisnauth, 149 AD3d 860, 861-862; People v Heidt, 95 AD3d 1234, 1235).
Contrary to the defendant's contention, the jury charge, which instructed the jury as to principal "or" accessorial liability, in the disjunctive, did not improperly amend the indictment, which charged the defendant with principal "and" accessorial liability, in the conjunctive. There was no requirement that the jury charge mirror the exact language of the indictment regarding principal and accessorial liability, because "there is no legal distinction between liability as a principal or criminal culpability as an accomplice" (People v Rivera, 84 NY2d 766, 769; see People v Duncan, 46 NY2d 74, 79-80).
"The Miranda rule protects the privilege against self-incrimination and, because the privilege applies only when an accused is compelled to testify, the safeguards required by Miranda are not triggered unless a suspect is subject to custodial interrogation" (People v Paulman, 5 NY3d 122, 129 [internal quotation marks omitted]; see People v Berg, 92 NY2d 701, 704). "The standard for assessing a suspect's custodial status is whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" (People v Paulman, 5 NY3d at 129; see People v Harris, 48 NY2d 208, 215; People v Brown, 177 AD3d 763, 764-765). The issue of whether a suspect is in custody is generally a question of fact (see People v Reardon, 124 AD3d 681, 683), and does not turn on the subjective beliefs of the defendant (see People v Yukl, 25 NY2d 585, 589), or the subjective intent of the police officer (see People v Reardon, 124 AD3d at 683). "The factors to be weighed include the amount of time which the defendant spent with the police, the manner, if any, in which his [or her] freedom was restricted, the location and atmosphere of his [or her] questioning, the degree of cooperation which he [or she] exhibited, whether he [or she] was apprised of his [or her] constitutional rights, and whether the questioning was investigatory or accusatory in nature" (People v Petrovich, 202 AD2d 523, 524; see People v Blake, 177 AD2d 636, 636).
Giving deference to the Supreme Court's credibility determinations (see People v Baggett, 57 AD3d 1093, 1094), the court's conclusion that the defendant was not in police custody before he was administered Miranda warnings (see Miranda v Arizona, 384 US 436) is supported by the record (see People v Gelin, 128 AD3d 717, 718). The hearing testimony established that the defendant voluntarily appeared at the police station to offer information about the accident, and was brought to an office where a detective asked him questions about his involvement. During the interview, the defendant was not handcuffed and had his cell phone with him (see People v Brown, 177 AD3d 763, 765). The questions were not accusatory or designed to elicit an incriminating response, and a reasonable, innocent person would not have believed that he or she was in custody at the time (see People Yukl, 25 NY2d 585; People v Meyer, 119 AD3d 876). Although a second detective subsequently entered the room, accused the defendant of lying, and confronted him with evidence of his guilt, the fact that the questioning may have turned accusatory in nature did not render the interview custodial given the other circumstances present in this case (see People v Brown, 177 AD3d at 765; People v Morris, 173 AD3d 1797, 1799).
Accordingly, we agree with the Supreme Court's determination to deny that branch [*3]of the defendant's omnibus motion which was to suppress his statements to law enforcement officials made prior to the administration of Miranda warnings. In light of the foregoing, we do not reach the defendant's remaining contention regarding the court's determination.
The record here does not support the defendant's contention that the prosecutor and the Supreme Court intimidated a defense witness into declining to testify (see People v Villacorta, 76 AD3d 911; People v Webb, 195 AD2d 614, 615; cf. People v Shapiro, 50 NY2d 747). The prosecutor simply informed the witness that the People would not be calling him at trial because they had evidence that his grand jury testimony was untruthful. The prosecutor did not emphasize the warning to the point of intimidation, threaten to prosecute the witness for perjurious testimony, or otherwise interfere with the witness's "free and unhampered choice to testify" (People v Shapiro, 50 NY2d at 761).
The defendant's remaining contentions are without merit.
SCHEINKMAN, P.J., MILLER, MALTESE and BARROS, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court