People v Lowe (2020 NY Slip Op 07918)





People v Lowe


2020 NY Slip Op 07918


Decided on December 23, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 23, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
JEFFREY A. COHEN
HECTOR D. LASALLE
ANGELA G. IANNACCI, JJ.


2018-10751
 (Ind. No. 1196/17)

[*1]The People of the State of New York, respondent,
v
John Lowe, appellant.


Paul Skip Laisure, New York, NY (Joshua M. Levine of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Roni C. Piplani,
and Peter R. Isham of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Robert Charles Kohm, J.), rendered August 29, 2018, convicting him of robbery in the second degree (two counts), unauthorized use of a vehicle in the third degree, assault in the third degree, grand larceny in the fourth degree, and criminal possession of stolen property in the fourth degree, upon a jury verdict, and sentencing him, as a persistent violent felony offender, inter alia, to an indeterminate term of imprisonment of 23 years to life on each count of robbery in the second degree, with all of the sentences to run concurrently. The appeal brings up for review the denial, after a hearing (Barry A. Schwartz, J.), of that branch of the defendant's omnibus motion which was to suppress certain statements made to law enforcement officials.
ORDERED that the judgment is modified, as a matter of discretion in the interest of justice, by reducing the sentence imposed on each count of robbery in the second degree from an indeterminate term of imprisonment of 23 years to life to an indeterminate term of imprisonment of 16 years to life; as so modified, the judgment is affirmed.
We agree with the Supreme Court's determination denying that branch of the defendant's omnibus motion which was to suppress his statements made to law enforcement officials. "Miranda warnings are required only when a suspect is subjected to 'custodial interrogation,' which, by definition, entails both 'custody' and 'interrogation'" (People v Mansilla, 187 AD3d 794, 795 [internal quotation marks omitted]; see Miranda v Arizona, 384 US 436; People v Kittell, 135 AD2d 1021, 1022; People v Valentin, 118 AD3d 823, 824). "The issue of whether a suspect is in custody is generally a question of fact, and does not turn on the subjective beliefs of the defendant, or the subjective intent of the police officer" (People v Hirji, 185 AD3d 1053, 1055 [internal citations omitted]; see People v Yukl, 25 NY2d 585, 589; People v Torres, 172 AD3d 758, 760; People v Reardon, 124 AD3d 681, 683). Rather, the test is what a reasonable person, innocent of any crime, would have thought had he or she been in the defendant's position (see People v Yukl, 25 NY2d at 589; People v Tavares-Nunez, 87 AD3d 1171, 1174).
Here, the hearing testimony established that the defendant voluntarily appeared at the police precinct station house to turn himself in for stealing the complainant's vehicle, and was seated approximately 15 to 20 feet away from the entrance when he was briefly questioned by the [*2]investigating police officer about his involvement. During the interview, the defendant was not handcuffed, and the questions were neither accusatory nor coercive. Although the officer testified that the defendant matched the complainant's description of the perpetrator, that fact did not render the interview custodial in nature under the unique circumstances of this case (see People v Hirji, 185 AD3d at 1055-1056; People v Brown, 177 AD3d 763, 765-766; People v Morris, 173 AD3d 1797, 1799; People v Davis, 48 AD3d 1086, 1087). Thus, the evidence at the suppression hearing supported the Supreme Court's conclusion that the statements made by the defendant prior to the administration of Miranda warnings were not the product of a custodial interrogation (see People v Mansilla, 187 AD3d at 795; People v Hirji, 185 AD3d at 1055-1056; People v Buchannan, 181 AD3d 615, 617; People v DeFelice, 180 AD3d 700, 701; People v Brown, 177 AD3d at 765-766; People v Bongarzone-Suaarcy, 13 AD3d 385, 386).
We agree with the defendant that the Supreme Court improvidently exercised its discretion in determining, after a Sandoval hearing (see People v Sandoval, 34 NY2d 371), that if he chose to testify at trial, the prosecutor could cross-examine him regarding the facts underlying his conviction in September 2005, of arson in the third degree, and his conviction in November 2005, of unauthorized use of a vehicle in the first degree and reckless endangerment in the first degree. Notwithstanding the court's Sandoval ruling, the defendant elected to testify at trial, during which he admitted to stealing the complainant's vehicle, which, according to him, had been parked on the street with the driver's side door open and "the lights on." The defendant testified that as he began driving away, a man came running toward the vehicle screaming. A few hours later, the defendant drove the vehicle to the police precinct station house to turn himself in for stealing the vehicle. On cross-examination, the prosecutor elicited from the defendant that his September 2005 conviction arose from an incident where, during the course of a robbery, he stabbed the victim and used a flammable substance to light the victim on fire. The prosecutor also elicited from the defendant that his November 2005 conviction arose from an incident where he forced the victim to "pull [his] vehicle over [and] give up his money, and [threatened] to kill him," and then "[took] [the victim] out of the car and [struck] him about his body with closed fists causing laceration to his forehead, his biceps."
In stark contrast to the defendant's testimony, the complainant testified that he was seated in the driver's seat of his vehicle, which was parked with the engine running, when the defendant, whom he knew from the neighborhood, approached the driver's side door, opened it, and demanded his money. When the complainant refused, the defendant began punching the complainant in the face. The defendant then removed the complainant's wallet from his front left pocket and threatened to stab the complainant unless he got out of the vehicle. After the complainant exited the vehicle, the defendant gained access and drove away. An officer who responded to the scene testified that he observed "some redness" underneath the complainant's left eye. The complainant was transported to Jamaica Hospital, where it was noted that he sustained "swelling" to his face. When the vehicle was returned to the complainant the next morning, his wallet was on the back seat of the vehicle. The People also admitted into evidence recordings of two anonymous calls to the 911 emergency number corroborating the complainant's testimony.
A Sandoval determination "rests largely within the reviewable discretion of the trial court, to be exercised in light of the facts and circumstances of the particular case before it" (People v Hayes, 97 NY2d 203, 207-208; see People v Williams, 12 NY3d 726, 727; People v Sandoval, 34 NY2d at 375). Although "questioning concerning other crimes is not automatically precluded simply because the crimes to be inquired about are similar to the crimes charged" (People v Pavao, 59 NY2d 282, 292; see People v Hayes, 97 NY2d at 208; People v Walker, 83 NY2d 455, 459), "'cross-examination with respect to crimes or conduct similar to that of which the defendant is presently charged may be highly prejudicial, in view of the risk, despite the most clear and forceful limiting instructions to the contrary, that the evidence will be taken as some proof of the commission of the crime charged rather than be reserved solely to the issue of credibility'" (People v Ridenhour, 153 AD3d 942, 943, quoting People v Sandoval, 34 NY2d at 377; see People v Brothers, 95 AD3d 1227, 1228-1229).
Here, although the facts underlying the September 2005 and November 2005 [*3]convictions had some probative value on the defendant's credibility, any such probative value was far outweighed by the potential prejudicial effect of those facts (see People v Cunny, 163 AD3d 708, 710; People v Ridenhour, 153 AD3d at 943-944; People v Calderon, 146 AD3d 967, 972; People v Wright, 121 AD3d 924, 928; People v Brothers, 95 AD3d at 1228-1229). Contrary to the defendant's contention, however, the Supreme Court's Sandoval ruling did not deprive him of his right to a fair trial (see People v Crimmins, 36 NY2d 230, 237; cf People v Ridenhour, 153 AD3d at 944). Moreover, the error in the Sandoval ruling was harmless, as the evidence of the defendant's guilt was overwhelming and there was no reasonable possibility that the error might have contributed to the defendant's convictions (see People v Crimmins, 36 NY2d at 237).
The sentence imposed was excessive to the extent indicated (see People v Suitte, 90 AD2d 80).
CHAMBERS, J.P., COHEN, LASALLE and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court